**Henry SOBRATTI, Appellant,**

v.

**TROPICAL SHIPPING AND CONSTRUCTION COMPANY, LTD., Appellee.**

Nos. CIV.A.2002/25, 448/1999.

District Court, Virgin Islands,
Appellate Division,
D. St. Croix.

June 5, 2003.

Lee J. Rohn, K. Glenda Cameron, Law Offices of Lee J. Rohn, St. Croix, VI, for Appellant.

Matthew J. Duensing, Garry E. Garten, Stryker, Duensing, Casner & Dollison, St. Thomas, VI, for Appellee.

Before: RAYMOND L. FINCH, Chief Judge, District Court of the Virgin Islands; THOMAS K. MOORE, Judge of the District Court of the Virgin Islands; and BRENDA J. HOLLAR, Judge of the Territorial Court, Sitting by Designation.

### *MEMORANDUM OPINION*

PER CURIAM.

Henry Sobratti ("Appellant", "Sobratti") challenges the trial court's grant of summary judgment and presents the following issues for review:

1) Whether the trial court erred in determining that the appellee was an "employer" immune from tort liability under the Longshoremen Harbor Workers Compensation Act ["LHWCA"]; and

2) Whether the court erred in ruling on the motion for summary judgment without benefit of a hearing and without permitting further discovery pursuant to Federal Rule of Civil Procedure 56(f).

Appellee additionally claims it is entitled to an award of attorney's fees and costs for what it terms a frivolous appeal.

For the reasons more fully stated below, the trial court's decision will be affirmed, and the appellee's request for attorney's fees and costs pursuant to V.I. Rules of Appellate Procedure 30(a) will be denied.

## I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

It is undisputed that appellant was hired by AllTemp Services and was assigned to work as a stevedore at Tropical Shipping and Construction Co., Ltd. ("Tropical", "Appellee"). It is further undisputed that Appellant was performing duties for Tropical at the time of his injury. The parties disagree, however, on the facts surrounding an issue that carries some legal significance here—that is, who was the appellant's employer under the facts of this case.

Sobratti contends that, during his term of employment with Tropical, he received project instructions from AllTemp. As evidence of such instructions, Sobratti points to a document titled, "Tropical Shipping Stevedore Project", which outlines the work schedule, time and attendance requirements, job descriptions and safety policies employees assigned to Tropical were expected to follow. [Joint Appendix ("J.A.") at 96–97]. That document also specifies that time cards are to be submitted to AllTemp. However, the document also provides that all personnel must agree to be bound by Tropical Shipping's safety policies and wear protective equipment as directed or supplied by Tropical Shipping. [*Id.*]. In support of his assertion that AllTemp controlled the specifics of the job, Sobratti also points to an affidavit in which he characterizes the above-mentioned document as a job description: "AllTemp provided me with a written job description of what to do and what not to do with respect to work done for Tropical Shipping." [J.A. at 26]. However, Tropical counters that the project instructions were actually written by and issued for Tropical. [Appellee's Br. at 6]. Moreover, Sobratti contends that payment for work done while at Tropical was made alternatingly by both Tropical and AllTemp. [J.A. at 74–82].

On April 11, 1999, while unloading a vessel at Tropical's worksite, Sobratti fell from a ladder and sustained serious injuries to his left elbow. It is undisputed that, at the time of his injuries, appellant was performing work for Tropical. [J.A. at 5–6, 88]. Appellant avers he is now unable to work as a result of those injuries. Following that incident, appellant filed a claim with the U.S. Department of Labor ("DOL")for benefits under the Longshoremen Harbor Worker Compensation Act ("LHWCA", "the Act"). [J.A. at 85–88]. By letter dated April 20,1999, the DOL notified Sobratti that it had determined he came within the jurisdiction of the LHWCA and was, therefore, entitled to receive compensation benefits. [J.A. at 85–86]. The DOL conducted an informal conference on June 14, 1999, at which Sobratti was represented by his legal counsel. [J.A. at 90]. Following that conference, on June 23, 1999, DOL issued a memorandum in which it concluded that the covered employer was Tropical Shipping. [J.A. at 88]. The DOL also established the amount of compensation to which Sobratti was entitled and also ordered Tropical to pay all of his medical expenses, in line with the statutory responsibilities of an employer. *Id.* As a result of that ruling, appellant collected benefits through Tropical's insurance carrier and Tropical. While appellant concedes he has received those benefits, he contends they were paid not entirely by Tropical but, rather, in part by Birdsall,Inc.—an entity with whom he is unfamiliar. [J.A. at 73]. Appellee contends Birdsall and Tropical are one and the same.

On or about July 28, 1999, appellant filed an action sounding in negligence in the Territorial Court and named Tropical as the sole defendant. In his complaint, appellant alleged,in part, that:

4. On or about April 11, 1999, the Plaintiff was employed by Alltemp Services, Inc. performing work at the container port.

5. Plaintiff was a borrowed employee of Defendant Tropical.

6. Plaintiff was instructed to use a ladder provided by Defendant.

7. The ladder was in a defective condition.

8. Defendant knew the ladder was in a defective condition and had previously been instructed by OSHA to remove the ladder from the job.

9. Defendant failed to warn Plaintiff of the dangerous condition.

10. As a direct and proximate result of Defendant's negligence and the defective condition of the ladder, it broke while Plaintiff was on it, Plaintiff having climbed almost to the top of the ladder.

[J.A. at 5–6]. In its answer, Tropical admitted appellant was an Alltemp employee, performing work with Tropical as a borrowed employee, as alleged in the complaint. [J.A. at 7]. Appellee also raised several affirmative defenses, arguing, *inter alia*, that because Sobratti was a borrowed employee of Tropical, he was limited to the remedies provided in the LHWCA and was barred from pursuing an independent tort action.[1]  [J.A. at 8]. Just over one month after the initial pleadings, and before any substantial discovery was conducted, Tropical filed a motion for summary judgment,[2] arguing the appellee's tort claim was statutorily barred. Tropical argued that Sobratti's assertions in the complaint that he was a borrowed employee of Tropical, as well as other evidence on record establishing that employment status, left no genuine issue of material fact to be decided. By Order entered October 5, 1999, the trial court put both parties on notice that the motion was to be decided without a hearing and ordered submission of any supporting affidavits or memoranda by October 26, 1999. [J.A. at 35]. Appellant never responded to the motion. Rather, on the deadline date set by the court, [J.A. at 2], appellant filed a motion to stay ruling on the motion pending further discovery, pursuant to Federal Rule of Procedure 56(f). As basis for that motion, appellant asserted that discovery regarding the owner of the vessel and the ladder[3] was particularly critical to determining the issue of control—a key inquiry in determining the appellant's actual employer. [J.A. at 20]. Appellant additionally claimed the contract between Tropical and Alltemps was also important in resolving the issue of control. The appellee opposed that motion; however, there is no indication in the record the court decided the motion to delay a decision on the summary judgment motion pending further discovery. Rather, the trial court, by order entered February 8, 2000, finally decided the motion for summary judgment in the ap-

---

1. Tropical also argues it is entitled to immunity under the V.I. Workmen's Compensation statute; however, that argument does not appear to be relevant here, as there is no indication a claim was filed—or compensation paid—under that statute.

2. Appellee also sought attorney's fees and costs. It does not appear from the record, however, that the trial court ruled on that motion.

3. Appellant argued he needed to determine who, from among Tropical and Birdsall, owned the vessel which was being off-loaded at the time of his injury.

pellee's favor, after finding that Sobratti was a borrowed employee of Tropical whose injuries were compensable solely as permitted under the LHWCA. [*J.A. at 1*]. This appeal followed.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

This Court has jurisdiction to review final judgments and orders of the Territorial Court in all civil matters. *See,* VIRGIN ISLANDS CODE ANN. tit. 4, § 33; Revised Organic Act of 1954 § 23A.

The trial court's grant of summary judgment is afforded plenary review, and this Court applies the same standard that should have been applied below. *See, Government of V.I. v. Innovative Communications Corp.,* 215 F.Supp.2d 603 (D.V.I. 2002). That standard dictates that summary judgment be granted only where, after viewing the evidence and the inferences to be drawn therefrom in the light most favorable to the non-movant, the court determines there are no genuine issues of material fact in dispute. *Id.;see, also, Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265(1986). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "material fact" is one whose determination would affect the outcome of the case. *See, Armbruster v. Unisys Corp.,* 32 F.3d 768,

777 (3d Cir.1994). The trial court's legal determinations or its interpretation of a statute is also afforded plenary review; however, its findings of fact may be disturbed only for clear error. *See, HOVIC v. Richardson,* 894 F.Supp. 211 (D.V.I.App.Div.1995);*In re Cendant Corp. Prides Litig.,* 233 F.3d 188, 193 (3d Cir. 2000).

### B. Was Summary Judgment Appropriate?

■ Sobratti challenges the lower court's grant of summary judgment as inappropriate, arguing there remained genuine issues of material fact in dispute regarding whether Tropical is an employer protected from tort liability under the LHWCA.[4]

■ The LHWCA provides protection for certain specified workers, by requiring employers to maintain insurance coverage to compensate employees in the event of injury. *See, Peter v. Hess Oil V.I. Corp.,* 903 F.2d 935 (3d Cir.1990). The underlying policy of the LHWCA is to ensure an immediate remedy, without the need for civil litigation, for employees who suffer injury, disability or death in the line of duty. *See, id.* The statute removes the burden from the employee to establish fault, in exchange for a speedy, albeit limited, remedy and a positive source of compensation for medical treatment and income benefits. The tradeoff for these assurances, however, is that injured employees who fall within the stat-

---

4. Appellant also argues it was error to decide the motion without a hearing. This argument is unpersuasive, as the decision to afford an opportunity to present arguments on a motion is one that is purely discretionary. *See, e.g., Government of V.I. v. Innovative Communications Corp.,* 215 F.Supp.2d 603, 606 n. 1 (D.V.I.2002) (quoting TERR.CT.R. 36(a) ("The Court, in its discretion, may set the motion for hearing or decide it based upon the submis-

sion(s).")). Moreover, Sobratti, who was specifically put on notice that the trial court intended to decide the motion based on the submissions, also requested no hearing below. As that issue was not raised below, the trial court's failure to afford such a hearing may only reversed for plain error, which cannot be shown here given the court's broad discretion in this regard and the facts of this case.

ute are limited to the remedies provided therein:

> The liability of an employer prescribed in section 904 of this title *shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty* on account of such injury or death . . . .

33 U.S.C.A. § 905 (emphasis added). This exclusivity provision has been judicially construed as a bar to tort claims against covered employers. *See, Peter,* 903 F.2d at 951–53 (holding that section 905 bars state tort claims against protected employers, although claims under states' workmen's compensation laws are not similarly barred, because of the common policies underlying those statutes); *accord, White v. Bethlehem Steel Corp.,* 222 F.3d 146(4th Cir.2000). Courts require strict adherence to this statutory "quid pro quo"—where employees are guaranteed prompt compensation in the event of injury, regardless of fault, and the employer enjoys anticipated limits on liability—in order to preserve the intent and purpose of that statute.[5] *See, Peter,* 903 F.2d at 952; *White,* 222 F.3d at 148–49(noting that permitting tort

liability would obstruct "the purposes of LHWCA by depriving maritime employers of their side of LHWCA's quid pro quo . . . ."). Because this tort immunity extends only to "employers," as defined in the LHWCA, there must be a threshold determination that the appellee is a statutory employer entitled to protection. The LHWCA defines an "employer" as:

> [A]ny of whose employees are employed, in whole or in part, upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel).

33 U.S.C.A. § 902(4).[6] This definition has been construed by both the courts and the administrative agency charged with administering the LHWCA compensation program to embrace the borrowed servant doctrine, thereby extending the responsibility for compensation insurance and the concomitant statutory protections to borrowing employers. *See, Peter,* 903 F.2d at 938–940(noting acceptance of this construction by DOL's Benefits Review Board; noting that, although this doctrine was abrogated by amendments to the Virgin Islands Workmen's Compensation Act, it remains applicable to the LHWCA)(citing

---

**5.** For a comprehensive look at the history and policy of the LHWCA, *see, Peter v. Hess Oil V.I. Corp., cited supra.*

**6.** This Court is unpersuaded by appellant's argument that the fact that he falls within the "twilight zone"—or area of uncertain coverage or protections by the LHWCA given the location where his injury occurred—which gives rise to an issue regarding whether he is within the scope of the LHWCA or may pursue an action in tort against Tropical. This issue generally arises where the injury occurs while conducting work connected with a vessel on land—or outside of a covered "situs," thereby creating uncertainties regarding the statute's protection. However, this is not an

issue here. Significantly, the U.S. DOL has already concluded Sobratti is so covered by the LHWCA and provided benefits accordingly, thereby rendering moot any issue regarding whether he comes within the jurisdiction of that statute. Moreover, through amendments to the LHWCA, the statute's scope has been clarified considerably to reach workers both in the waters and immediate surrounding harbor areas, so long as their duties are in connection with a vessel. The statute also now provides concurrent jurisdiction with state remedies, permitting land workers to recover both under the LHWCA and state Workmen's Compensation statutes. *See, generally, Peter,* 903 F.2d 935.

*Vanterpool v. Hess Oil V.I. Corp.*, 766 F.2d 117, 121 (3d Cir.1985)); *see, also, Standard Oil Co. v. Anderson*, 212 U.S. 215, 220, 29 S.Ct. 252, 53 L.Ed. 480(1909)(noting that one may be in the "general employ of one company while at the same time being in the particular employ of another with all the legal consequences of the new relation."). The significance of the implicit incorporation of the borrowed servant doctrine is that borrowing employers are entitled to the same limits on liability as general employers.

■ Whether one is a protected borrowing employer is a question of law, to be decided by the court in the first instance. However, that determination is, by necessity, fact-driven, based on the nature of—and the facts surrounding—the employment relationship and a determination of who had control to direct the employee's work, and whose work was being performed.[7] *See, Standard Oil*, 212 U.S. at 221–22, 29 S.Ct. 252; *White*, 222 F.3d at 149; *cf.*, RESTATEMENT (SECOND) OF TORTS § 414. In this jurisdiction, this inquiry is developed by establishing: 1) whether the borrowing employer was responsible for the borrowed employee's working conditions, and; 2) whether the employment was of such duration that the borrowed employee could be assumed to have acquiesced in the risks of the new employ-

ment. *See, Peter*, 903 F.2d at 935 (adopting two-prong analysis)(citing *Gaudet v. Exxon Corp.*, 562 F.2d 351 (5th Cir.1977)[8]; *Vanterpool*, 766 F.2d at 122 (noting that express or implied contract for employment required)).

### 1. Admissions in Complaint Removed Genuine Issue of Fact

■ Sobratti claims error in the trial court's failure to make findings on the factors outlined above, before concluding he was Tropical's borrowed employee. However, Tropical argues its status as the employer was not subject to reasonable dispute, given Sobratti's prior admissions on that issue. This Court agrees that Sobratti's assertions of fact in his pleadings, coupled with other evidence on the record, constituted admissions which conclusively determined the issue of Tropical's employer status, thereby removing any genuine dispute on that issue.

■ In deciding whether summary judgment is proper, consideration is given to facts in the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." FED. R. CIV. P. 56(c). Because a complaint is intended to summon the resources of the court, and given the responsibility placed on parties to ensure that claims filed with

---

7. *Compare,* 3 LARSON WORKMEN'S COMPENSATION LAW § 67.05(3) (recognizing that where employer is in the business of furnishing employees to others, such as temporary service, the worker essentially becomes the employee of the borrowing employee).

8. The court in *Gaudet* listed nine factors for the borrowing employer determination:
   (1) Who has control over the employee and the work he is performing, beyond mere suggestion of details for cooperation?
   (2) Whose work is being performed?
   (3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?
   (4) Did the employee acquiesce in the new work situation?
   (5) Did the original employer terminate his relationship with the employee?
   (6) Who furnished tools and place for performance?
   (7) Was the new employment over a considerable length of time?
   (8) Who had the right to discharge the employee?
   (9) Who had the obligation to pay the employee?
   *Gaudet*, 562 F.2d at 355. However, this jurisdiction has adopted the two-prong approach discussed in Peter.

the court are properly based on fact, a party's pleadings are viewed with solemnity. *See, e.g., Giannone v. U.S. Steel Corp.,* 238 F.2d 544, 547(3d Cir.1956)(pleadings are supposed to be factual rather than fictional). Given the seriousness of pleadings, and to "preserv[e] the integrity of the courts by preventing litigants from playing fast and loose with the courts" in offering intentional self-contradictions, factual assertions made in pleadings are binding on the party asserting the fact, absent a later amendment. *Cf., Chaffee v. Kraft General Foods, Inc.* 886 F.Supp. 1164, 1169 (D.N.J. 1995) (discussing judicial estoppel). Thus, facts asserted in pleadings may be regarded as "judicial admissions" which are binding on the party asserting them for the purpose of that case and any later appeal and which do not have to be later proven. *See, In re Cendant Corp. Securities Litig.,* 109 F.Supp.2d 225, 230 (D.N.J.2000), *criticized on other grounds,* 264 F.3d 201 (3d Cir.2001); *see, also, Giannone,* 238 F.2d at 547; *Kean v. Adler,* 2002 WL 31641650, *1–2 (D.V.I. Nov. 18, 2002)(government estopped from retreating from earlier factual assertions regarding the extent of another party's ownership interests in the disputed property); *compare, Ratner v. Young,* 465 F.Supp. 386, 389 (D.V.I.1979)(distinguishing the effect of verified and unverified complaints); *Martin v. Merrell Dow Pharmaceuticals, Inc.,* 851 F.2d 703, 706 (3d Cir.1988) (discussing inability of party to contradict prior deposition testimony within later-filed affidavit to defeat summary judgment and holding that "the objectives of summary judgment would be seriously impaired if the district court were not free to disregard the conflicting affidavit."). Therefore, where a party offers deliberate, clear and unequivocal facts in a complaint, those assertions are binding on the party and have the effect of withdrawing a factual issue from contention. *See, Glick v. White Motor Co.,* 458 F.2d 1287 (3d Cir.

1972); see, also, 10A CHARLES A. WRIGHT AND ALAN R. MILLER, FEDERAL PRACTICE AND PROCEDURE §§ 2722, 2723(1998). Hence, a party is precluded from retreating from a factual claim, which he affirmatively asserted in support of his cause of action, simply to avoid summary judgment. *See,* e.g., *Davis v. A.G. Edwards & Sons, Inc.,* 823 F.2d 105 (5th Cir.1987)(granting summary judgment based on assertions in pleading, despite plaintiff's effort to recant by later affidavit an issue of fact that would have resulted in dismissal of the claim based on statute of limitations); *Schott Motorcycle Supply, Inc. v. American Honda Motor Co.,* 976 F.2d 58, 61(1st Cir.1992)(granting summary judgment where pleadings offered facts establishing contract issue, despite plaintiff's later arguments to the contrary); *But see,* FED. R. CIV. P. 8(e)(permitting different theories to be pled in the alternative). The import of this judicial rule is that, "a party can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts." *See,* 30B WRIGHT AND MILLER § 7026 (2000).

Here, Sobratti claimed in his complaint—and the appellee admitted—that he was a borrowed employee of Tropical. He further asserted Tropical provided the equipment required to complete that work and failed in its duty to ensure that such equipment was safe. The factual basis of appellant's entire negligence claim was that he was working for Tropical at the time he was injured; that Tropical had a duty, as his employer, to provide safe equipment and failed to do so in this instance by providing him with a defective ladder, and that Tropical's safety standards were breached.

Additionally, the assertions in the initial pleadings were consistent with Sobratti's claims to the administrative agency, for the purpose of recovering benefits under the LHWCA. Throughout the administra-

tive proceedings following his injury, Sobratti continuously asserted and relied on the fact that he was an employee of Alltemps, performing duties for Tropical. [J.A. at 93]. Indeed, there was never any dispute that Sobratti, at the time of his injury, was unloading the vessel for the benefit of Tropical and was utilizing a ladder provided by Tropical. It is also worth noting the absence of any indication on this record that Sobratti ever challenged the agency's finding that he was an employee of Tropical. Indeed, he benefitted from that finding by receiving medical and income benefits from Tropical. Appellant's primary argument suggesting that Alltemps exercised control over his job rests on a document titled, "Tropical Shipping Stevedore Project," which outlines certain work expectations. Appellee disputes that those mandates were that of Alltemps and asserts they were prepared and distributed on behalf of Tropical. These distinctions offer little to the resolution of this issue, however. Notwithstanding the significance Sobratti attempts to cast on that document—and even accepting appellant's version that the document was provided by Alltemps—the document plainly states only general expectations for employees assigned to assume duties with Tropical and is not determinative of which entity actually controlled the specific details of Sobratti's work *at the time he was injured. See, Standard Oil*, 212 U.S. at 220, 29 S.Ct. 252("The authority of the borrowing employer does not have to extend to every incident of an employer-employee relationship; rather, it need only encompass the servant's performance of the particular work."). Nor is that document sufficient to vitiate the clear import of Sobratti's assertions, most notably in the complaint, that he was performing work under Tropical's direction at the time he was injured.

As earlier noted, Sobratti's entire negligence action was premised on his view that Tropical, as his employer with control over the conduct of his work and his safety, breached its duty to provide safe working equipment. Permitting Sobratti to now recant the assertions on which his cause of action was formulated, when it becomes evident that they are destructive to his underlying negligence claim, would seriously undermine the purposes of summary judgment. Having admitted in his complaint—and, implicitly by accepting the agency's finding and the benefits flowing from that finding—that Tropical was his employer at the time of his injury, Sobratti is bound by that admission and cannot now rely on a contrary argument simply to create an issue of fact and avoid summary judgment.

## 2. Denial of 56(f) Motion Was Not Error

■ Federal Rule of Civil Procedure 56(f) relief is discretionary; therefore, a trial court's failure to grant additional time for discovery before ruling on a motion for summary judgment is reviewed for abuse of discretion. *See, Innovative*, 215 F.Supp.2d at 606; *St. Surin v. Virgin Islands Daily News, Inc.*, 21 F.3d 1309 (3d Cir.1994)(citing *Radich v. Goode*, 886 F.2d 1391, 1393 (3d Cir.1989)). Such an abuse of discretion will be found only if it is evident that further discovery would have changed the outcome. *See, Innovative*, 215 F.Supp.2d at 606.

■ Here, a determination that Tropical did not assume employer status was the linchpin for the viability of Sobratti's tort action. Given the clearly established employer-employee status between the parties, under the standards stated above, this Court rejects appellant's argument that details of an agreement, if any, between Tropical and Birdsall, Inc. or Alltemps sufficiently bore on the issue of control to preclude summary judgment

pending further discovery. Because the facts on record and the appellant's admissions established that work was being performed for Tropical and under its control at the time of Sobratti's injury, there was nothing material to be gleaned from further discovery. *See, Innovative,* 215 F.Supp.2d at 611(holding it was not error to decline Rule 56(f)request for further discovery prior to ruling on summary judgment motion, where no amount of discovery would have changed the ultimate outcome).[9] In light of the facts presented to the trial court and the appellant's admissions on that issue, the trial court appropriately determined there were no genuine issues of material fact which a reasonable trier of fact could resolve in the appellant's favor. Its decision in that regard will be affirmed.

### C. Whether This Appeal is Frivolous, Warranting Sanctions.

In its responsive brief, Tropical additionally argues this appeal is frivolous, given the well-settled law in this circuit on the issues presented and, accordingly, asks this Court to award sanctions in its favor.

A party may seek sanctions if it perceives that it was forced to defend against an appeal that is "wholly without merit", based on an objective standard of reasonableness. *See,* V.I.R.App. P. 30(a); *see, also, Hilmon Co. v. Hyatt Int'l,* 899 F.2d 250, 253 (3d Cir.1990); *Nagle v. Alspach,* 8 F.3d 141, 144–46 (3d Cir.1993). However, that request must be made in a separate motion, in keeping with the particularized due process notice which must be afforded the non-moving party. *See,* VIRAP 30(a); *see, also, In re Complaint of PMD Enterprises, Inc.* 301 F.3d 147, 152 (3d Cir.2002)(denying request for sanctions, because "[a] statement inserted in a party's brief that the party moves for sanctions is not sufficient notice.")(analyzing claim under Fed.R.App.P. 38). Because the appellee did not file a separate motion for relief in this instance, its request for sanctions must be denied.[10]

## III. CONCLUSION

Given the facts and procedural posture of this case, this Court should find no

---

**9.** *St.Surin,* 21 F.3d 1309, and *Sames v. Gable,* 732 F.2d 49 (3d Cir.1984),on which the appellant relies, are not inapposite to the conclusion reached here. In *St. Surin,* the court, reviewing the disposition of a defamation claim, held summary judgment was improper while a Rule 56(f) motion was pending, where there was key outstanding discovery on the issue of falsity and malice which would have affected the outcome. *St. Surin,* 21 F.3d. at 1314. The court also considered the discovery problems which had plagued development of the case over a period of several years and which were aggravated largely by the movant's lack of cooperation to provide information solely in its possession, and the fact that the trial court had issued its ruling without giving the non-movant an opportunity to respond. *Id.* Thus, the *St. Surin* court was not faced with the circumstances present here but, rather, with a situation where the court clearly rushed to judgment, without alerting the plaintiff that it intended to issue a ruling

based on the submissions on record. Moreover, in distinguishing its earlier decision in *Dowling, v. Philadelphia,* 855 F.2d 136, 140 (3d Cir.1988),that court noted that denial of a Rule 56(f) request constitutes no abuse of discretion where the evidence sought would not have precluded summary judgment. *Id.* Similarly, in *Sames, 732 F.2d 49, 50–52 (3d Cir.1984),* the court determined that summary judgment was not proper where information was solely in the movant's possession and where there had been no cooperation in responding to interrogatories. The courts in *St. Surin* and *Sames* were not faced with the facts present here, where the party seeking to avoid summary judgment has admitted the basic facts supporting the claim.

**10.** Of course, this Court may impose sanctions *sua sponte,* after providing notice of the possible sanction and providing an opportunity to be heard.

error in the trial court's grant of summary judgment. Significantly, the primary issue appellant contests is whether he was, in fact, an "employee" of Tropical, such that he is now barred from maintaining a separate tort action under the LHWCA. The record is replete with admissions and facts which establish that Tropical was the borrowed employer with control over Sobratti's work at the time he was injured and who is, therefore, protected under the statute. Appellant claims in his complaint that Tropical was his borrowing employer and had a duty to provide him with safe equipment to complete the job. Further, appellant sought and received medical and income compensation under the LHWCA, based on Tropical's coverage and based on an agency finding that Tropical was his employer. There is nothing in the record to indicate Sobratti contested the finding of. the agency on this issue as inaccurate. Rather, he relied on that finding to receive compensation under the Act. More importantly, appellant's admissions in his pleadings regarding his employer's status—an issue central to this litigation—precludes a finding that there remain genuine issues of material fact in dispute regarding that status. In view of the foregoing, there was no error in the trial court's failure to permit further discovery, to forestall a decision on the motion which was inevitable under these facts. For similar reasons, there was no error in the court's failure to set a hearing on the summary judgment motion. The court's grant of summary judgment will, therefore, be affirmed. However, appellee's request for sanctions was not properly brought and will be denied.

### ORDER

For the reasons stated in an accompanying Memorandum Opinion of even date, it is hereby

**ORDERED** that the trial court's order granting the appellee's motion for summary judgment is **AFFIRMED**; it is further

**ORDERED** that the appellee's request for sanctions is **DENIED**.