**ARLINGTON FUNDING SERVICES, INC. and ALFRED ARCIDI,**
**Appellants/Plaintiffs**

**v.**

**WILFREDO A. GEIGEL, Appellee/Defendant**

S. Ct. Civ. No. 2008-007

Supreme Court of the Virgin Islands

February 9, 2009

 

DAVID MARSHALL NISSMAN, ESQ., David Marshall Nissman, LLC, St. Thomas, USVI, *Attorney for Appellants*.

WILFREDO A. GEIGEL, ESQ., St. Thomas, USVI, *Pro se*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*

## OPINION OF THE COURT

(February 9, 2009)

PER CURIAM. Appellants Arlington Funding Services, Inc., and Alfred Arcidi (hereafter referred to individually as "Arlington" and "Arcidi" and collectively as "Appellants") appeal from a Superior Court order granting summary judgment to Appellee Wilfredo A. Geigel (hereafter "Geigel" or "Appellee") and dismissing Appellants' complaint. For the following reasons, we shall dismiss Arcidi's appeal for lack of standing and affirm the trial court's judgment with respect to Arlington.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 15, 1995, Arcidi, Development Consultants, Inc. (hereafter "DCI"), and King's Alley Development Corporation (hereafter "KADCO") entered into a contract in which Arcidi agreed to loan $300,000.00 to DCI and KADCO. Pursuant to the loan agreement, four guarantors — Francis J. Duggan (hereafter "Duggan"), Dwain E. Ford (hereafter "Ford"), Stephen Hendren (hereafter "Hendren"), and Peter Ross (hereafter "Ross") — were to guarantee payment of the loan. Under the agreement, Duggan was liable for a maximum amount of $150,000.00 and was required to execute and deliver to Arcidi a collateral assignment of Duggan's interest in his Merrill Lynch account. The unpaid principal balance of the loan, as well as all unpaid interest, was due and payable on

or before June 15, 1995, though Arcidi later extended the maturity date to July 28, 1995.

After the extended deadline passed, Arcidi demanded payment from Duggan, but Duggan refused to pay the $150,000.00. Arcidi also discovered that Duggan withdrew all funds from the Merrill Lynch account he had used to secure his guaranty obligations under the loan agreement. On December 15, 1998, Arcidi assigned his interest in the loan agreement, guarantees, and Duggan's Merrill Lynch account to Arlington, a company of which Arcidi serves as president. On or about May 4, 1999, Arcidi formally retained Geigel to represent him and Arlington, though Arcidi continued to pursue informal means of collecting the debt from Duggan.

While the parties dispute the exact scope of Geigel's representation,[1] it is not in dispute that Geigel never informed Arcidi of the statute of limitations for filing suit against Duggan for his breach of the loan agreement. Geigel's tenure as Arcidi and Arlington's attorney ended in November 2003 when Arcidi requested that Geigel turn over his file to Attorney Kevin Rames (hereafter "Rames"), who took over representation even though he had represented KADCO, Duggan, Ford, Hendren, and Ross in the same matter several years ago.

Geigel sent Rames the file on December 15, 2003. After retaining Rames, Arcidi continued to pursue informal means of debt collection. On March 5, 2004, Arlington assigned its interest in the loan agreement, guarantees, and Duggan's Merrill Lynch account to Greenleaf, VI, Inc. (hereinafter "Greenleaf"), another company of which Arcidi serves as president.[2] Once Arcidi's informal attempts at collecting the debt failed, Rames researched the potential remedies Arcidi had against Duggan. In a May 27, 2005 letter from Rames to Arcidi, Rames stated that the Duggan guarantee became void and uncollectable due to the applicable statute of

---

[1] According to Appellants, Geigel was hired "to pursue all available means to collect the sums outstanding under the Loan Agreement and personal guarantees." (Appellants' Br. at 7.) However, Geigel claims that he was hired for the limited purpose of representing Arcidi in a lawsuit filed against him and Duggan by Ford, and that Arcidi never requested that he pursue a cross-claim against Duggan or even initiate communication with Duggan regarding the $150,000.00 owed under the loan agreement. (Appellee's Br. at 5-6.)

[2] The assignment to Greenleaf was not disclosed at the trial court level until Appellants filed their January 18, 2008 motion for reconsideration of the trial court's summary judgment order.

limitations expiring on June 14, 2001, during the period Geigel was representing Arcidi and Arlington in the matter.

On November 2, 2006, Greenleaf filed suit against Duggan to collect the amount due under the loan agreement. On May 15, 2007, Arlington and Arcidi sued Geigel for negligence/malpractice and breach of contract. On August 31, 2007, Geigel filed a motion to dismiss under FED. R. CIV. P. 12(b)(6). The trial court construed Geigel's motion as one for summary judgment because Geigel attached exhibits to his motion. On December 21, 2007, the trial court entered an order granting the motion for summary judgment, dismissing Appellants' complaint on statute of limitations grounds. Appellants filed a motion for reconsideration of the summary judgment order on January 18, 2008 and filed their Notice of Appeal of that order on the same day.[3]

## II. JURISDICTION

"Before this Court can decide the merits of the instant appeals, we must first determine if we have jurisdiction over this matter." *V.I. Gov't Hosp. and Health Facilities Corp. v. Gov't of the V.I.*, 50 V.I. 276, 279 (V.I. 2008). "The Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE ANN. tit. 4 § 32(a). Because the summary judgment order was entered on December 21, 2007, and Appellants' Notice of Appeal was filed on January 18, 2008, the Notice of Appeal was timely filed. *See* V.I. S. CT. R. 5(a)(1) ("the notice of appeal required by Rule 4 shall be filed with the Clerk of the Superior Court within thirty days after the date of entry of the judgment or order appealed from . . .").

Although this Court and the Superior Court are not Article III courts, Article III's requirement that a litigant have standing to invoke a court's authority has been incorporated into Virgin Islands jurisprudence. *See Dennis v. Luis*, 741 F.2d 628, 630 (3d Cir. 1984) (holding that

---

[3] Although the trial court denied Appellants' motion for reconsideration shortly before oral arguments in this case, we do not review the trial court's denial of reconsideration because, in the absence of a second notice of appeal, "an appellate court does not have jurisdiction to review orders issued by the lower court . . . after notice of appeal of that judgment had been filed." *V.I. Gov't Hosp. and Health Facilities Corp. v. Gov't of the V.I.*, 50 V.I. 276, 279 (V.I. 2008) (citing *Delman v. Federal Products Corp.*, 251 F.2d 123, 128 (1st Cir. 1958)).

traditional concept of standing applies to the Virgin Islands); *see also Turnbull v. Twenty-Sixth Legislature of Virgin Islands*, 48 V.I. 127, 131 (V.I. Super. Ct. 2006) (citing *Dennis*). The United States Supreme Court has held that a litigant, to meet the minimum constitutional requirements necessary to establish standing, must demonstrate (i) an actual or threatened injury that was (ii) caused by the defendant's actions and is (iii) capable of judicial redress. *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982). When evaluating these factors, this Court "accept[s] as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 2206, 45 L. Ed. 2d 343 (1975).

 Geigel argues that neither Arlington nor Arcidi have standing to sue him for these causes of action.[4] According to Geigel, "[w]hen Arcidi assigned his rights under the agreement and the collateral agreement on December 15, 1998 any claim against Duggan and any collateral claim arising thereof as the action against Geigel was extinguished." (Appellee's Br. at 7-8.) Likewise, Geigel argues that "[t]he same thing happened on March 5, 2004 as it pertains to Arlington Funding." (*Id.* at 8.) Geigel thus concludes that only Greenleaf — which is not a party to this action — has standing to pursue the instant claims. (*Id.*)

 We agree that Arcidi does not have standing to sue Geigel for legal malpractice or breach of contract. Arcidi assigned his entire interest in the loan agreement to Arlington on December 15, 1998. Once one assigns a right under a contract to another party, the assignor's claim to

---

[4] It is well established that, "[a]bsent exceptional circumstances, an issue not raised in the trial court will not be heard on appeal." *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 335 (V.I. 2007) (citation and brackets omitted). However, "[s]tanding represents a jurisdictional requirement which remains open to review at all stages of the litigation." *National Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255, 114 S. Ct. 798, 127 L. Ed. 2d 99 (1994). Furthermore, the standing argument was never addressed by the trial court because Appellants never disclosed that Arlington had assigned its interest to Greenleaf until its motion for reconsideration, filed after the trial court had granted summary judgment to Geigel on other grounds. Because the standing issue relates to this Court's jurisdiction, and the trial court did not have the opportunity to consider the issue because of Appellants' failure to disclose the assignment until after Appellants' claims were dismissed on other grounds, we find that exceptional circumstances exist to justify consideration of the standing issue for the first time on appeal. *See Belitskus v. Pizzingrilli*, 343 F.3d 632, 639 (3d Cir. 2003) (holding that it is "immaterial" that a litigant's standing is challenged for the first time on appeal.).

that right is "extinguished" and thereafter only the assignee may properly collect under the contract. RESTATEMENT (SECOND) OF CONTRACTS § 317. Arcidi did not retain Geigel as an attorney in this matter until on or about May 4, 1999, or almost five months after his right to collect the Duggan guaranty was extinguished. Accordingly, even if Geigel had timely informed him of the applicable statute of limitations, Arcidi would not have had the right to file suit against Duggan under the agreement. Because Arcidi could not have suffered an actual or threatened injury due to Geigel's actions, he does not have standing to sue Geigel. According, this Court shall dismiss the instant appeal as it pertains to Arcidi.

However, we disagree with Geigel's analysis as it pertains to Arlington. Arlington obtained its interest in the agreement from Arcidi on December 15, 1998, and transferred it to Greenleaf on March 5, 2004. Thus, unlike Arcidi, Arlington possessed the right to file suit against Duggan under the agreement at the time the statute of limitations lapsed.

Geigel emphasizes that "[i]n November 2003 Arlington had a cause of action against Duggan, it did not pursue it, instead it assigned the rights to Greenleaf VI, Inc. four months later, in March 2004." (Appellee's Br. at 8.) However, the fact that Arlington — which, according to its complaint, did not know the statute of limitations elapsed until May 27, 2005 — subsequently assigned its rights to Greenleaf is irrelevant to the standing analysis. It is a long standing principle of tort law that loss of the right to sue represents an injury in and of itself. *See Drury v. Butler*, 171 Mass. 171, 50 N.E. 527, 528 (1898) ("[I]t is enough to say that the plaintiff lost a valuable right by the failure of the defendants' intestate to bring a suit seasonably . . . . Prima facie, the loss of such a right would cause him damage."). Actions a party takes after losing that right — for instance, entering into a settlement agreement with the defendant in the time-barred suit — do not eliminate this injury.[5] *See King v. Jones*, 258 Ore. 468, 483 P.2d 815, 818 (1971); *see also Parnell v. Ivy*, 158 S.W.3d 924, 928 (Tenn. Ct. App. 2004).

Arlington, though it eventually assigned its rights to Greenleaf, suffered an injury when the statute of limitations elapsed. Though

---

[5] These actions, though irrelevant as to whether an injury exists, are still relevant to the extent that they would reduce any damages awarded to compensate for the injury. *See Whiteaker v. State*, 382 N.W.2d 112, 113 (Iowa 1986) (holding that measure of injury in a legal malpractice action is "the difference between what the client should have recovered but for the negligence, and what the client actually recovered.").

Arlington made this assignment while still under the impression that the loan agreement could be enforced in court, it is possible that Arlington, had it known about the statute of limitations, would have filed suit against Duggan itself in 2001 rather than make an assignment. Similarly, if it were aware of the statute of limitations, it is also possible that Arlington would have made the assignment to Greenleaf several years earlier, thus reducing Arlington's expenses in attempting to settle the matter. Accordingly, Arlington has standing to bring this suit against Geigel for it (i) has an actual injury that was (ii) caused by Geigel's actions and is (iii) capable of judicial redress.[6]

## III. DISCUSSION

Although Arlington has standing to bring the instant suit, for the following reasons we shall affirm the trial court's grant of summary judgment to Geigel.

### A. Standard of Review

"The standard of review in an appeal from a grant of summary judgment is *de novo*." *Seales v. Devine*, S. Ct. Civ. No. 2007-040, 2008 V.I. Supreme LEXIS 23, *3, [WL] (V.I. 2008). "When reviewing an order granting summary judgment, this Court is required to view the facts in the light most favorable to the opposing party, and in effect, perform the same test the Superior Court would have performed." *Id.* "The moving party can only prevail if it shows that there is no genuine issue regarding any material fact and that it is entitled to judgment as a matter of law." *Id.*

---

[6] Geigel also argues that a finding that Arlington has standing would open the possibility of a subsequent suit against him by Greenleaf on the same substantive grounds. Geigel's fear is unfounded, for Greenleaf, like Arcidi, does not have standing to sue Geigel under these causes of action because it has not suffered an actual injury that was caused by Geigel's actions. Nothing in the record indicates that Greenleaf ever had an attorney-client relationship with Geigel or that Geigel otherwise possessed a duty to inform Greenleaf of the statute of limitations. To the extent that Greenleaf relied on any false representations made to it by Arlington or Arcidi that had their roots in Geigel's negligence, Greenleaf's remedy would be to sue Arlington or Arcidi, not Geigel. Because Greenleaf does not have standing to sue Geigel for legal malpractice or breach of contract, there is no fear that allowing Arlington to pursue the instant causes of action could subject Geigel to multiple lawsuits dealing with the same issues.

## B. The Nature of a Legal Malpractice Action

In its complaint, Arlington asserted causes of actions against Geigel for malpractice/negligence as well as breach of contract. The statute of limitations in the Virgin Islands for a negligence claim is two years, while the limitations period for a breach of contract action is six years. 5 V.I.C. § 31. In its order granting Geigel summary judgment, the trial court, stated that the statute of limitations for legal malpractice claims in this jurisdiction is two years. (App. 58.) Arlington, however, argues that the trial court erred in applying a two year statute of limitations because a litigant alleging legal malpractice is entitled to sue on either a tort or contract theory. Therefore, before considering the merits of the trial court's application of the statute of limitations to Arlington's claims, it is necessary to clarify the nature of a legal malpractice cause of action and determine which statute of limitations period should apply.

Both Geigel and the trial court correctly note that the District Court of the Virgin Islands has applied a two year statute of limitations in legal malpractice claims where the plaintiff sought to recover on the basis of the attorney's negligence. *See, e.g., Edwards v. Groner*, 23 V.I. 265, 116 F.R.D. 578, 579 (D.V.I. 1987); *Moorehead v. Miller*, 21 V.I. 79, 102 F.R.D. 834, 836-37 (D.V.I. 1984); *Simmons v. Ocean*, 19 V.I. 232, 544 F. Supp. 841, 845 (D.V.I. 1982); *Ingvoldstad v. Young's Estate*, 19 V.I. 115, 95 F.R.D. 79, 80 (D.V.I. 1982). But these district court cases — in addition to not being binding precedent on this Court — do not stand for the proposition that *all* legal malpractice claims are based on negligence and a litigant may never pursue a malpractice claim based on a breach of contract theory. Notably, the *Moorehead* court correctly observed that, although "[t]he fact that both parties signed a retainer agreement . . . does not bring this case within the realm of a contract action," a client's "legal malpractice suit," if "based on the nonperformance of a specific undertaking or promise contained in the contract," may "sound in contract, and thereby be governed by the six year statute of limitations provided in 5 V.I.C. § 31(3)(A) (1967)." 102 F.R.D. at 836-37.

Likewise, many courts in jurisdictions that lack a statute imposing a specific limitations period for professional malpractice actions have held that a legal malpractice action may sound in either tort or contract depending on the facts alleged in the complaint. *See, e.g., Coregis Ins. Co. v. Baratta & Fenerty, Ltd.*, 264 F.3d 302, 308 (3d Cir. 2001) (quoting

*Edwards v. Thorpe*, 876 F. Supp. 693, 694 (E.D. Pa. 1995)) (applying Pennsylvania law); *Santulli v. Englert, Reilly & McHugh, P.C.*, 78 N.Y.2d 700, 586 N.E.2d 1014, 579 N.Y.S.2d 324 (N.Y. 1992);[7] *Lee Houston & Associates v. Racine*, 806 P.2d 848, 855 (Alaska 1991); *Higa v. Mirikitani*, 55 Haw. 167, 517 P.2d 1, 4-5 (1973); *Hillhouse v. McDowell*, 219 Tenn. 362, 410 S.W.2d 162, 166 (1966); *Weiner v. Clinton*, 106 Conn. App. 379, 942 A.2d 469, 473-75 (Conn. App. Ct. 2008); *Alken-Ziegler, Inc. v. George Bearup, Smith, Haughey, Rice & Roegge, P.C.*, No. 264513, 2006 Mich. App. LEXIS 615, *7, [WL] (Mich. Ct. App. 2006); *Long v. Buckley*, 129 Ariz. 141, 629 P.2d 557, 560-61 (Ariz. Ct. App. 1981); *Dolce v. Gamberdino*, 60 Ill. App. 3d 124, 376 N.E.2d 273, 275 (Ill. App. Ct. 1978).

We agree with these jurisdictions that a legal malpractice cause of action may sound in tort or contract. Accordingly, we hold that the two year limitations period applies when the malpractice action is based on an attorney's negligence and the six year limitations period applies when the malpractice claim has as its basis an attorney's failure to perform a specific service that was contracted upon by the parties, other than the failure of an implied duty to exercise reasonable skill or diligence. Therefore, we shall apply a two year statute of limitations to Arlington's malpractice/negligence claim and a six year limitations period to Arlington's breach of contract cause of action.

## C. The Statute of Limitations for Legal Malpractice Rooted in Tort Has Lapsed

Although the trial court recognized that "there is no evidence that Arcidi or any other principal of Arlington had actual knowledge of the date upon which the statute of limitations on Duggan's guarantee would expire" and that "the earliest Arcidi or a principal of Arlington knew about the statute of limitations on the collection of Duggan's guarantee was when Arcidi received the Rames Letter" dated May 27, 2005, it held that the two year statute of limitations for filing a legal malpractice action to recover for Geigel's purported negligence had begun to run much

---

[7] In response to this case and earlier New York cases that allowed legal malpractice plaintiffs to proceed under both tort and breach of contract theories, the New York Legislature passed a statute, CPLR 214(6), expressly subjecting legal malpractice actions to a three year statute of limitations.

earlier.[8] (App. 58.) The trial court identified two significant dates: Rames obtaining the case file from Geigel on December 15, 2003, and Rames actually reviewing that case file on February 2 and 8, 2004. Because Arlington had retained Rames as its attorney during this time period, the trial court, after applying the discovery and imputed knowledge rules, concluded the fact that Rames knew or should have known that the statute of limitations to collect the Duggan debt had lapsed must be imputed to Arlington, and thus the two year limitations period had already run before Arlington commenced litigation on May 15, 2007. We agree.

 "The premise" of the discovery rule "is that the statute of limitations should not run" in a legal malpractice action "until the client knows or should know the essential facts of the cause of action." *Moorehead*, 21 V.I. at 84. *See also Yazzie v. Olney, Levy, Kaplan & Tenner*, 593 F.2d 100, 103 (9th Cir. 1979) ("Thus . . . the question of when appellants knew or should have known of appellees' negligence is critical to determining whether the statute of limitations has run."). Thus, the two year statute of limitation in the instant matter would not begin to run until Arlington knew or should have known about Geigel's purported negligence in his handling of the Duggan matter. Arlington contends that because it did not discover Geigel's negligence until May 25, 2005, this Court should hold that the statute of limitations began to run on that date and therefore its action was timely. We disagree, for the discovery rule does not operate in a vacuum, but in conjunction with the imputed knowledge rule.

 In the absence of local laws to the contrary, "the restatements of the law approved by the American Law Institute . . . shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply." 1 V.I.C. § 4. The Restatement (Third) of Agency articulates the imputed knowledge rule, and reads, in pertinent part:

> For purposes of determining a principal's legal relations with a third party, notice of a fact that an agent knows or has reason to know is

---

[8] In its order, the trial court identifies May 2003 as the date the statute of limitations period began to run in this case. However, nothing in the record indicates that May 2003 is an operative or relevant date in this dispute, and the May 2003 date does not appear anywhere else in the trial court's order. Accordingly, it appears that the May 2003 date is a typographical error, with the trial court likely meaning either December 2003 — the month Rames obtained the case file from Geigel — or February 2004, the month Rames's billing records indicated he actually reviewed the file.

imputed to the principal if knowledge of the fact is material to the agent's duties to the principal, unless the agent

(a) acts adversely to the principal as stated in §5.04, or

(b) is subject to a duty to another not to disclose the fact to the principal.

RESTATEMENT (THIRD) OF AGENCY, § 5.03 (2006). A comment to this Restatement provision indicates that, if the criteria outlined in § 5.03 are met, an agent's knowledge is imputed onto the principal for purposes of applying the discovery rule:

Knowledge of a fact of reason to know it may determine whether a person has asserted a claim in timely fashion by bringing suit because knowing the fact or having reason to know it determines when the applicable statute of limitations begins to run. . . . Facts that an agent knows or has reason to know may thus determine whether the principal has acted in timely fashion.

RESTATEMENT (THIRD) OF AGENCY, § 5.03 cmt. d(5) (2006).

 It is well established that "the attorney-client relationship is an agent-principal relationship." *McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842, 853 (3d Cir. 1996). Accordingly, information an attorney receives during the scope of his representation of a client will be imputed onto that client even if the client does not have actual knowledge of that information. *See Lempert*, 26 V.I. at 341 (imputing attorney's knowledge of an easement to his client); *see also Kaeding v. W.R. Grace & Co.*, 289 Mont. 343, 961 P.2d 1256, 1261 (1998) ("Thus, knowledge of facts by an attorney is knowledge by the client, regardless of whether the attorney actually communicated the information to the client."). Therefore, as a general rule, the statute of limitations on a client's action will begin to run when the client's attorney knew or should have known about the circumstances giving rise to that claim, even if the client lacks knowledge of the potential claim. *See Veal v. Geraci*, 23 F.3d 722, 725 (2d Cir. 1994) (concluding that appellant's civil rights action was time-barred because counsel's knowledge of a tainted line-up was imputed to the client despite client's lack of actual knowledge).

But this general rule is not without exceptions. First, "[n]otice of the fact is imputed to the principal" only "if the fact is material to the agent's

duties . . . ." RESTATEMENT (THIRD) OF AGENCY, § 5.03 cmt. e (2006). *See Triple A Mgmt. Co., Inc. v. Frisone*, 69 Cal. App. 4th 520, 81 Cal. Rptr. 2d 669, 678 (Cal. Ct. App. 1999) (holding that the scope of imputation is limited to the scope of the duty arising from the agency agreement); *Anderson v. Walthal*, 468 So. 2d 291, 294 (Fla. Dist. Ct. App. 1985) ("[I]t is equally settled that knowledge of, or notice to, an agent is imputed to the principal when it is received by the agent while acting within the course and scope of his employment."); *Bryant v. Livigni*, 250 Ill. App. 3d 303, 619 N.E.2d 550, 556 (Ill. App. Ct. 1993) (holding that imputation to principal is proper "if the information concerns a matter within the scope of the agent's authority."); *Jackson v. Mutual Benefit Life Ins.*, 79 Minn. 43, 81 N.W. 545, 546 (1900) ("Notice to an agent, to constitute constructive or implied notice to a principal, must be of facts within the scope of the agency . . . ."). Furthermore, as stated earlier, imputation does not occur if an agent acts adversely to the principal or "is subject to a duty to another not to disclose the fact to the principal." RESTATEMENT (THIRD) OF AGENCY, § 5.03 (2006).

 Arlington contends that the first of these three exceptions applies here. According to Arlington, the statute of limitations to collect the Duggan debt was not material to Rames's duties to Arlington because the scope of Rames's representation was limited due to his earlier representation of KADCO, Duggan, Ford, Hendren, and Ross in essentially the same matter. In an expanded affidavit submitted after Geigel raised his statute of limitations defense, Arcidi quoted at length from a letter Rames sent to Arlington's current counsel.[9] In this letter, Rames stated that he "never intended to initiate litigation for Dr. Arcidi

---

[9] The trial court, in a footnote to its summary judgment order, correctly recognized that this statement "is, at minimum, hearsay, and possibly hearsay on hearsay." (App. 59, n.2.) However, the court found that it "will consider the information from that letter in deciding this motion." (*Id.*) As a general rule, inadmissible hearsay may not be used to support or defeat a motion for summary judgment. *See Brooks v. Tri-Systems, Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005); *see also* FED. R. CIV. P. 56(e); FED. R. EVID. 801(c). However, in this case Geigel did not object to this statement on hearsay grounds at the trial court level or on appeal. Accordingly, Geigel has waived any possible hearsay objection on appeal. *See BGHA, LLC v. City of Universal City, Tex.*, 340 F.3d 295, 299 (5th Cir. 2003) (holding that party waived hearsay objection to affidavits introduced in support of motion for summary judgment "by failing to object below to the admission of the affidavits."); *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) ("If a party fails to object before the [trial] court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the [trial] court's consideration of such materials are deemed to

and against Mr. Duggan" because he had represented KADCO in its earlier efforts to maintain its interest in the King's Alley property.[10] (App. 52.) Rames further wrote that he thus "had an irreconcilable conflict of interest." (*Id.*) Most significantly, Rames states that the scope of his initial representation of Arlington and Arcidi was limited, stating that "I fully recall that when I was soliciting the file from Attorney Geigel, it was on the basis that Dr. Arcidi had negotiated a voluntary repayment scenario with Mr. Duggan, and that all I needed to do was to prepare the confirming documents. With a voluntary resolution reached without my direct involvement, I reasoned, the conflict would be remediated." (*Id.*) Rames concluded by stating that he did not consider the collectability of the debt until he was informed in May 2005 that Arcidi failed in his voluntary collection efforts.

██ However, we decline to consider the Arcidi affidavit, to the extent that it contradicts averments in the Appellants' complaint. Although the standard of review for a motion for summary judgment requires this Court to "view the facts in the light most favorable to the opposing party," *Seales*, 2008 V.I. Supreme LEXIS 23, at *4, it is well established that a plaintiff may not avoid summary judgment through creating an issue of material fact by contradicting, without explanation, the substantive allegations in his complaint through an inconsistent sworn affidavit or deposition testimony. *See Martin v. Merrell Dow Pharmaceuticals, Inc.,* 851 F.2d 703, 706 (3d Cir. 1988); *Bennett v. Flanigon,* 220 F.2d 799, 802 (7th Cir. 1955). In *Sobratti v. Tropical Shipping and Const. Co., Ltd.,* 267 F. Supp. 2d 455, 462-63 (D.V.I. App. Div. 2003), the Appellate Division of the District Court recently held that the act of filing a complaint with a court places a responsibility on a party "to ensure that claims filed with the court are properly based on fact," and "[t]hus, facts asserted in pleadings may be regarded as 'judicial admissions' which are binding on the party asserting them for the purpose of that case and any later appeal and which do not have to be later proven." *See also Davis v. A.G. Edwards and Sons, Inc.,* 823 F.2d 105, 107-08 (5th Cir. 1987)

---

have been waived, and we will review such objections only to avoid a gross miscarriage of justice.").

[10] Though Rames claims to only have represented KADCO in this letter, in an earlier letter — sent to Arcidi in June 23, 1997 — Rames identified himself as "counsel to [KADCO] and its principals, Francis J. Duggan, Dwain E. Ford, Stephen L. Hendren and Peter Ross." (Supp. App. 14.)

("Irrespective of which document contains the more accurate account, the Davises are bound by the admissions in their pleadings, and thus no factual issue can be evoked by comparing their pleadings with Dr. Davis' affidavit.").

Here, the excerpts of the Rames letter contained in Arcidi's affidavit contradict the statements in the complaint Arcidi and Arlington filed with the Superior Court. The complaint states that "Plaintiffs retained a second attorney to *pursue collection* under the Loan Agreement and Duggan guaranty." (App. 6) (emphasis added). Such a statement is fundamentally inconsistent with the averments in Arcidi's affidavit that Arcidi was to engage in negotiations with Duggan, with Rames's role limited solely to preparing documents memorializing the agreement between Arcidi and Duggan. Accordingly, we find that Arlington is bound by the admission in its complaint and may not rely on a subsequent affidavit to create an issue of fact and avoid summary judgment. *Sobratti*, 267 F. Supp. 2d at 462-63.

As an attorney hired to "pursue collection" of the Duggan debt on behalf of Arlington, Rames owed a duty to timely review the case file provided by Arlington's former attorney and calculate the statute of limitations for filing suit to collect that debt. The record indicates that Rames received that file on December 15, 2003, and reviewed it in early February 2004. Thus, Rames knew or should have known about Geigel's negligence more than three years before Arlington ultimately filed suit against Geigel. Because the statute of limitations for legal malpractice rooted in tort is two years, and Rames's knowledge is imputed onto Arlington, Arlington's malpractice/negligence cause of action is time-barred. Therefore, the trial court's grant of summary judgment to Geigel on this count must be affirmed.

## D. Arlington Can Not Prevail on a Legal Malpractice Claim Rooted in Contract

Because the statute of limitations for a breach of contract action is six years, Arlington's breach of contract cause of action against Geigel is not time-barred. 5 V.I.C. § 31. Nevertheless, the trial court was correct to grant summary judgment on this claim to Geigel because, even if one interprets all disputed issues of material fact in the light most favorable to Arlington, a breach of contract claim against Geigel cannot survive as a matter of law. "To succeed on a breach of contract claim, a plaintiff must

134

show four elements: (1) an agreement, (2) a duty created by that agreement, (3) a breach of that duty, and (4) damages." *Galt Capital, LLP v. Seykota*, Civil Nos. 2002-63, 2002-134, 2007 U.S. Dist. LEXIS 53199, *6 (D.V.I. July 18, 2007); *see also* RESTATEMENT (SECOND) OF CONTRACTS, § 235 (stating that non-performance of a contractual duty constitutes a breach of contract). Furthermore, as discussed earlier in this opinion, a client filing suit against an attorney for breach of contract must identify a specific act agreed to by the parties that the attorney failed to perform, and may not simply repackage a negligence claim as a breach of contract action by designating an attorney's failure to exercise reasonable skill or diligence as the breach.

 Here, the record does not reflect that an actual agreement ever existed between Arlington and Geigel, let alone an agreement that required Geigel to perform a specific action with respect to the Duggan debt. While Arlington has alleged that Geigel was retained for the specific act of filing suit against Duggan, no retainer agreement was included in the Appendix, and at oral argument counsel for both parties conceded that no written agreement existed. Because of the complete failure of proof as to the existence of an agreement between the parties, Arlington's breach of contract claim must fail as a matter of law. *See Granader v. McBee*, 23 F.3d 120, 122-23 (5th Cir. 1994) (holding that one cannot maintain breach of contract action when there is no evidence of an agreement between the parties).

## V. CONCLUSION

Since Arcidi does not have standing to sue Geigel for legal malpractice, this appeal, as it pertains to him, must be dismissed. Because a legal malpractice claim may sound in either tort or contract, Arlington may properly assert both negligence and breach of contract causes of action against Geigel. However, Arlington's negligence cause of action is time-barred because it was filed more than two years after Arlington's attorney knew or should have known about Geigel's alleged negligence. Furthermore, although Arlington's breach of contract cause of action is not time-barred, Arlington's claim fails as a matter of law because no agreement existed between it and Geigel which required Geigel to perform a specific act on Arlington's behalf. Accordingly, the Superior Court's grant of summary judgment to Geigel is affirmed.

## ORDER OF THE COURT

**AND NOW**, consistent with the reasons outlined in the Opinion of the Court of even date, it is hereby

**ORDERED** that this appeal is **DISMISSED** for lack of standing with respect to Appellant Alfred Arcidi; and it is further

**ORDERED** that the Superior Court's December 21, 2007 judgment is **AFFIRMED**; and it is further

**ORDERED** that copies of this order be directed to the parties.

**SO ORDERED** this 9th day of February, 2009.