IN THE SUPREME COURT
OF THE VIRGIN ISLANDS

**FILED**

January 10, 2025 03:07 PM
SCT-CIV-2016-0044
VERONICA HANDY, ESQUIRE
CLERK OF THE COURT

**For Publication**

# IN THE SUPREME COURT OF THE VIRGIN ISLANDS

| | | |
|---|---|---|
| **JEREMY SIMKINS,** | ) | **S. Ct. Civ. No. 2016-0044** |
| Appellant/Plaintiff, | ) | Re: Super. Ct. Civ. No. 08/214 (STX) |
| | ) | |
| v. | ) | |
| | ) | |
| **THE BANK OF NOVA SCOTIA, ET AL.,** | ) | |
| Appellees/Defendants. | ) | |
| | ) | |
| | ) | |

On Appeal from the Superior Court of the Virgin Islands
Division of St. Thomas & St. John
Superior Court Judge: Hon. Douglas A. Brady

Considered: March 14, 2017
Filed: January 10, 2025

Cite as: 2025 VI 2

BEFORE: **RHYS S. HODGE**, Chief Justice; **MARIA M. CABRET**, Associate Justice; and **IVE ARLINGTON SWAN**, Associate Justice.

APPEARANCES:

**Lee J. Rohn, Esq.**
**Rhea R. Lawrence, Esq.**
Law Offices of Lee J. Rohn and Associates, LLC
St. Croix, U.S.V.I.
        *Attorneys for Appellant*,

**Pamela Lynn Colon, Esq.**
Law Offices of Pamela Lynn Colon, LLC
St. Croix, U.S.V.I.
        *Attorney for Appellee*.

# OPINION OF THE COURT

**HODGE, Chief Justice.**

¶ 1     Appellant Jeremy Simkins appeals from the Superior Court's September 23, 2014 opinion

and order which dismissed his negligence claims against Appellee Bank of Nova Scotia ("BNS").

*Simkins v. Bank of Nova Scotia*        2025 VI 2
S. Ct. Civ. No. 2016-0044
Opinion of the Court
Page 2 of 11

For the reasons that follow, we reverse.

## I. BACKGROUND

¶ 2     On January 24, 2008, Simkins suffered injuries while walking on the sidewalk in downtown Christiansted, St. Croix, when he stepped on a manhole cover in front of a building leased by BNS, which caused the cover to flip up and for him to fall into the manhole. On April 17, 2008, Simkins sued the Virgin Islands Department of Public Works ("DPW"), the Virgin Islands Waste Management Authority ("WMA"), and BNS for negligence. BNS moved for summary judgment on September 21, 2009, on grounds that it did not owe Simkins any duty because it did not own or control the sidewalk that abutted its leased property.

¶ 3     In a September 23, 2014 opinion, the Superior Court granted BNS's motion, holding that BNS owed no legal duty with respect to the sidewalk adjacent to its premises. Since Simkins never alleged that BNS itself created the dangerous condition, the Superior Court reasoned that the absence of a legal duty required dismissal of his complaint against BNS.

¶ 4     Simkins continued to maintain his claims against the DPW and the WMA and, after mediation, filed a stipulation for dismissal against those defendants on June 3, 2016. The Superior Court approved the stipulation on July 23, 2016, and dismissed all causes of action between all the parties with prejudice. Simkins then filed a notice of appeal with this Court on August 28, 2016, requesting review of the Superior Court's September 23, 2014 opinion. *See* V.I.S.Ct.R. 5(a)(1) ("[I]f the Government of the Virgin Islands or the United States of America or an officer or agency thereof is a party, the notice of appeal may be filed by any party within 60 days after such entry [of judgment].").

## II. DISCUSSION

### A.  Jurisdiction

*Simkins v. Bank of Nova Scotia*          2025 VI 2
S. Ct. Civ. No. 2016-0044
Opinion of the Court
Page 3 of 11

¶ 5     This Court has appellate "jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE ANN. tit. 4, § 32(a). The Superior Court's September 23, 2014 opinion and order did not constitute a final judgment, since it only disposed of some—but not all—claims between the parties. *Davis v. Allied Mortg. Capital Corp.*, 53 V.I. 490, 498 (V.I. 2010). However, because the Superior Court's July 23, 2016 order dismissed, with prejudice, all claims between all the parties, it certainly qualifies as a final judgment that permitted Simkins to timely seek appellate review of the September 23, 2014 opinion and order, which he did on August 28, 2016. *See, e.g., Walters v. Walters*, 60 V.I. 768, 774 (V.I. 2014) (holding that an order "dismissing the case with prejudice ended the litigation on the merits" and constitutes a final order).

¶ 6     Nonetheless, BNS argues that this Court lacks appellate jurisdiction over this matter. According to BNS, the text of the July 26, 2016 order approving the June 3, 2016 stipulation provided for the voluntary dismissal with prejudice of "**all** claims of [Simkins] against **all** Defendants in this matter." (J.A. 13 (emphasis added).) BNS thus argues that this Court lacks jurisdiction because Simkins failed to preserve his right to appeal from the September 23, 2014 opinion and order, on the basis that Simkins purportedly voluntarily agreed to the dismissal of his claims against BNS with prejudice.

¶ 7     BNS's argument lacks merit.  As a threshold matter, a party's explicit or implicit waiver of the right to appeal does not deprive this Court of appellate jurisdiction. Like the Supreme Court of the United States, this Court has cautioned against the use of "unrefined" language to characterize potential errors as jurisdictional.  *See, e.g., MOAC Mall Holdings, LLC v. Transform Holdco, LLC*, 598 U.S. 288, 297-98 (2023); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 511 (2006); *Vanterpool v. Gov't of the V.I.*, 63 V.I. 563, 573 (V.I. 2015); *Ottley v. Estate of Bell*, 61 V.I. 480,

*Simkins v. Bank of Nova Scotia*         2025 VI 2
S. Ct. Civ. No. 2016-0044
Opinion of the Court
Page 4 of 11

488 (V.I. 2014). As we previously explained, a requirement is "jurisdictional if it governs a court's adjudicatory capacity" and is not jurisdictional if it only "seeks to promote the orderly process of litigation by requiring that the parties take certain procedural steps at certain specified times but does not intend to limit a court's authority to hear a case." *Brooks v. Gov't of the V.I.*, 58 V.I. 417, 424 n.5 (V.I. 2013) (quoting *First Am. Dev. Group/Carib, LLC v. WestLB AG*, 55 V.I. 594, 611 (V.I. 2011) (internal quotation marks omitted)). This distinction is not "merely academic" in that the failure to comply with jurisdictional requirements "can never be excused" and "may be invoked at any stage of the proceedings, even by the court *sua sponte*," whereas non-jurisdictional defects may potentially be tolled, waived, or otherwise excused. *Allen v. HOVENSA, LLC*, 59 V.I. 430, 435-36 (V.I. 2013). While this Court may summarily affirm or dismiss appeals that raise only waived claims, *see, e.g., Simpson v. Golden*, 56 V.I. 272, 280 (V.I. 2012), the fact that a party chooses to only raise claims that were waived certainly does not deprive this Court of subject-matter jurisdiction to hear the appeal.

¶ 8     But in any event, we conclude that Simkins did not waive his right to appeal the September 23, 2014 opinion and order. The June 3, 2016 stipulation of dismissal reads, in its entirety, as follows:

> IT IS HEREBY STIPULATED by and between the Plaintiff JEREMY M SIMKINS and Defendant GOVERNMENT OF THE VIRGIN ISLANDS through their undersigned counsel that all claims filed against GOVERNMENT OF THE VIRGIN ISLANDS in above matter are hereby dismissed, WITH PREJUDICE, each party to bear their own costs and fees for the reason that the parties have amicably resolved their differences by way of settlement.

In other words, the June 3, 2016 stipulation clearly reflects that Simkins only agreed to dismiss, with prejudice, the counts against the defendants that are part of the Government of the Virgin Islands: DPW and WMA. While the July 26, 2016 order provided for dismissal of "all claims of

*Simkins v. Bank of Nova Scotia*                    2025 VI 2
S. Ct. Civ. No. 2016-0044
Opinion of the Court
Page 5 of 11

Plaintiff against all Defendants in this matter," it defies logic that the Superior Court's use of the shorthand "all Defendants" as opposed to the more precise language Simkins used in the stipulation somehow enlarged the scope of the stipulation to also encompass BNS. Moreover, the Superior Court's use of the "all Defendants" phrase in the July 26, 2016 order is certainly understandable, in that by this time BNS was no longer a defendant in the case given that the Superior Court had already dismissed Simkins's only claim against BNS in the September 23, 2014 opinion and order. Therefore, we conclude that Simkins has not waived his right to appeal from the September 23, 2014 opinion and order and seek reinstatement of his negligence claim against BNS.

## B. Legal Duty

¶ 9      Simkins argues that the Superior Court erred in granting BNS's motion for summary judgment on its negligence claim. The standard of review on an appeal from a grant of summary judgment is *de novo*. *Santiago v. V.I. Hous. Auth.*, 57 V.I. 256, 263-64 (V.I. 2012) (citing *Arlington Funding Services, Inc. v. Geigel*, 51 V.I. 118, 127 (V.I. 2009)). "When reviewing an order granting summary judgment, this Court is required to view the facts in the light most favorable to the opposing party, and in effect, perform the same test the Superior Court would have performed." *Id*. "The moving party can only prevail if it shows that there is no genuine issue regarding any material fact and that it is entitled to judgment as a matter of law." *Id.* To the extent its decision is not based on legal conclusions or factual findings, this Court reviews the Superior Court's denial of a motion for leave to amend a complaint for abuse of discretion. *Id.*

¶ 10      "In order to determine whether summary judgment was appropriate, we must analyze the Superior Court's decision in the context of the substantive law governing the cause of action." *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 380 (V.I. 2014) (citing *Perez v. Ritz-Carlton*

*Simkins v. Bank of Nova Scotia*          2025 VI 2
S. Ct. Civ. No. 2016-0044
Opinion of the Court
Page 6 of 11

*(V.I.), Inc.*, 59 V.I. 522, 528 (V.I. 2013)). This Court has adopted "the foundational elements of

negligence — (1) a legal duty of care to the plaintiff, (2) a breach of that duty of care by the

defendant (3) constituting the factual and legal cause of (4) damages to the plaintiff." *Machado*,

61 V.I. at 380. In this case only the first element—the existence of a legal duty—is currently in

dispute.[1]

¶ 11     Simkins maintains that the Superior Court erred in determining that BNS owed him no

legal duty of care. Specifically, he contends that BNS possessed duties to maintain the sidewalk

or the manhole cover, or to report their defective conditions to the government and warn

pedestrians of the danger. We address each purported duty in turn.

   1.  <u>Duty to Maintain</u>

¶ 12     Simkins argues that the Superior Court implicitly rejected evidence that BNS controlled

the sidewalk and thereby owed pedestrians some duty of care. He directs this Court to paragraph

8 of BNS's lease agreement with its landlord, Kongens Gade Building Corporation ("KGBC"),

which read in its entirety as follows:

> 8. Maintenance. Landlord will provide all services customary in first class office
> buildings in the Virgin Islands, including cleaning of the public portion of the
> building and the sidewalks, excluding interior tenant cleaning. Tenant shall have
> the obligation to maintain and keep the demised premises in clean condition and
> good repair, including the normal day-to-day maintenance. Upon expiration of the
> term of this lease or any extension hereof, Tenant will surrender the premises to
> Landlord in as good condition as they are now in.

Thus, BNS expressly agreed to "maintain and keep the demised premises in clean condition and

---

[1] As noted earlier, BNS sought summary judgment exclusively on the ground that it did not owe Simkins a legal duty with respect to the adjacent sidewalk, and the Superior Court granted the summary judgment motion solely on that basis. Therefore, we express no opinion on whether the evidence in the record reflects that Simkins has or has not satisfied the other three elements of his negligence claim against BNS. *See United Corp. v. Tutu Park Ltd.*, 55 V.I. 702, 720 n.16 (V.I. 2011).

*Simkins v. Bank of Nova Scotia*          2025 VI 2
S. Ct. Civ. No. 2016-0044
Opinion of the Court
Page 7 of 11

good repair, including the normal day-to-day maintenance." (J.A 143.) Simkins argues that, as a result, it was error for the court to "simply assume[] that the Government, in fact, exclusively owned and controlled the sidewalk without explaining why the lease was not evidence of ownership or control." (Appellant's Br. 5.)

¶ 13     We disagree, albeit for different reasons than those articulated by the Superior Court in its September 23, 2016 opinion.  The Superior Court analyzed the question as a matter of common law and, after conducting the analysis required by *Banks v. International Rental & Leasing Corp*., 55 V.I. 967 (V.I. 2011), determined that it was the sounder rule for the Virgin Islands to "place no duty upon the possessor of land abutting a public sidewalk relative to the risk posed by the condition of the sidewalk, regardless of whether the possessor's interest in the land is commercial or residential, unless the possessor of the abutting land created the risk." (J.A. 36.) Applying this common law rule, the Superior Court concluded that BNS possessed no legal duty to maintain or repair the sidewalk or the manhole cover because Simkins presented no evidence that BNS created the risk.

¶ 14     The Superior Court erred, however, in treating this question as one of common law. While the Superior Court must conduct a *Banks* analysis "when confronting an issue of common law that this Court has yet to address," it may not do so when a valid Virgin Islands statute already addresses the issue. *In re L.O.F.*, 62 V.I. 655, 661 n.6 (V.I. 2015). This is because the Legislature ultimately possesses the "inherent power to alter or abrogate the common law."  *Banks*, 55 V.I. at 979. Thus, "when dealing with the interpretation of a Virgin Islands statute, courts must utilize the canons of statutory construction defined by this Court and the Virgin Islands Code in order to determine the intent of the Legislature—which must control over any common-law authority that would be the focus of a *Banks* analysis." *L.O.F.,* 62 V.I. at 661 n.6.

*Simkins v. Bank of Nova Scotia*          2025 VI 2
S. Ct. Civ. No. 2016-0044
Opinion of the Court
Page 8 of 11

¶ 15      The Legislature has vested the Department of Public Works with the duty to maintain and repair all public roads, highways, "and properties of like character." *See* 3 V.I.C. § 138(a)(4); 20 V.I.C. § 1(a)-(b).  The Legislature has similarly vested the Waste Management Authority with the duty to maintain the public sewage system. *See* 19 V.I.C. § 1522; 29 V.I.C. § 498. These statutes unquestionably establish that the government possesses the duty to maintain the public sidewalk and the manhole cover. And while the government may certainly contract with or otherwise delegate this function to another entity, *cf. Defoe v. Phillip*, 56 V.I. 109, 132-22 (V.I. 2012), there is absolutely no evidence whatsoever that it ever did so with respect to the sidewalk and manhole cover in question. While paragraph 8 of the lease agreement between BNS and KBGC seems to place a duty on BNS to "maintain and keep the demised premises in clean condition and good repair, including the normal day-to-day maintenance," J.A 83, we question whether this contractual duty would extend to the adjacent sidewalk and manhole cover, given that paragraph 9 of the same lease agreement expressly provides that the "[l]andlord" – and not the tenant – "shall maintain the structure in a sound and safe condition including the exterior of the premises, the building, *the sidewalk*, etc." (J.A. 83 (emphasis added).)  But even if it did, the lease agreement is only between BNS and KGBC, and there is no evidence that at any point the government delegated its authority to maintain and repair the sidewalk and manhole cover in question to KGBC, so as to allow KGBC to then legitimately sub-delegate that duty to BNS. *See, e.g., LNH One, LLC v. Gaspar*, 686 S.W.3d 1, 10 (Ark. Ct. App. 2024) ("[A]n agent cannot delegate authority . . . which he or she does not have.").  Consequently, Simkins failed to produce sufficient evidence to permit a rational trier of fact to conclude that BNS possessed a duty to maintain either the sidewalk or the manhole cover.

  2.  Duty to Report or Warn

*Simkins v. Bank of Nova Scotia*  2025 VI 2
S. Ct. Civ. No. 2016-0044
Opinion of the Court
Page 9 of 11

¶ 16    Simkins also asserts that even if BNS did not owe a duty to maintain or repair the sidewalk or the manhole cover, it nevertheless did possess separate duties to report the defective condition to the government and to warn pedestrians of the danger.  Without either citing to any precedents of this Court or performing a *Banks* analysis,[2] the Superior Court rejected this argument by relying on a single decision of the Supreme Court of Rhode Island adopting the rule that a defendant only owes a duty to warn if the defendant created the dangerous condition. *See Wyso v. Full Moon Tide, LLC*, 78 A.3d 747 (R.I. 2013).

¶ 17    We disagree. The Rhode Island rule is wholly inconsistent with our own precedents, in which we have repeatedly held that "foreseeability . . . is the touchstone of the existence of the duty of reasonable or ordinary care," without in any way limiting that duty to only foreseeable harms caused by the defendant.  *See Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373 (V.I. 2014); *Perez v. Ritz-Carlton (V.I.) Inc.*, 59 V.I. 522 (V.I. 2013).  This foreseeability-based rule is consistent with the well-established and obvious principle that

> [d]uty is not a rigid concept; it adjusts to the changing social relations of society. To determine if a duty exists, we examine the totality of the circumstances. When the defendant's actions are relatively easily corrected and the harm sought to be prevented is serious, it is fair to impose a duty.

*Siddons v. Cook*, 887 A.2d 689, 693 (N.J. Super. Ct. App. Div. 2005).  It also furthers the important public policy of likely every United States jurisdiction—including the Virgin Islands—of

---

[2] As we explain below, our *Machado* and *Perez* precedents establish that BNS owed Simkins a duty to warn. However, even if that were not the case, the failure to conduct a *Banks* analysis would also constitute error that may warrant summary reversal. *Wilkinson v. Wilkinson*, 70 V.I. 901, 907 (V.I. 2019) (observing that "[w]hen addressing issues of Virgin Islands common law that this Court has yet to address using the *Banks* framework, the Superior Court must engage in the three-factor analysis outlined in *Banks*," and that "the Superior Court err[s] in relying on [case law] without conducting a *Banks* analysis") (citing *King v. Appleton*, 61 V.I. 339, 349 (V.I. 2014) and *Better Bldg. Maint. of the V.I., Inc. v. Lee*, 60 V.I. 740, 756-57 (V.I. 2014)).

*Simkins v. Bank of Nova Scotia* 2025 VI 2
S. Ct. Civ. No. 2016-0044
Opinion of the Court
Page 10 of 11

promoting safe roads, *see, e.g., Barela v. C.R. England & Sons, Inc.*, 2000 WL 139981, at *4 (10th Cir. 1999) (unpublished); *State v. Houghton*, 868 N.W.2d 143, 151 (Wis. 2015); *Teetor v. Dawson Pub. Power Dist.*, 808 N.W.2d 86, 92 (Neb. Ct. App. 2012), which is certainly effectuated by incentivizing those aware of unsafe conditions abutting their businesses to warn pedestrians of the danger and to notify the government agencies charged with remedying those conditions.

¶ 18    In this case, BNS only argued in its summary judgment motion that it did not owe a duty because it did not own or control the sidewalk, and that it did not owe a duty to Simkins because he was not a customer of the bank.  But ownership, control, or responsibility for the dangerous condition are not prerequisites for the duty to warn or report a known danger, and our decision in *Machado* renders Simkins's status as a customer or non-customer irrelevant. Because BNS never represented in the statement of uncontested facts supporting its summary judgment motion that it had no knowledge of the defective manhole cover on the sidewalk abutting its business or that the harm stemming from its failure to warn or report was not foreseeable, J.A. 133-35, Simkins possessed no obligation to submit proof in support of those elements, and therefore neither the Superior Court nor this Court may reach those issues *sua sponte*.  *United Corp. v. Tutu Park, Ltd.*, 55 V.I. 702, 711 (V.I. 2011).  Therefore, we conclude that Simkins presented sufficient evidence to create a genuine issue of material fact as to whether BNS owed him a duty to warn of the dangerous condition or to report the danger to the government.

### III. CONCLUSION

¶ 19    We agree with the Superior Court, albeit for different reasons, that BNS did not possess a duty to maintain and repair the sidewalk or manhole cover adjacent to its leased premises. However, we conclude that the Superior Court erred in holding that BNS had no legal duty to warn or report the dangerous condition.  Accordingly, we reverse the September 23, 2014 judgment and

*Simkins v. Bank of Nova Scotia*  2025 VI 2
S. Ct. Civ. No. 2016-0044
Opinion of the Court
Page 11 of 11

order and reinstate Simkins's negligence claim against BNS.

**Dated this 10th day of January, 2025**

**BY THE COURT:**

/s/ Rhys S. Hodge_____
**RHYS S. HODGE**
**Chief Justice**

**ATTEST:**

**VERONICA J. HANDY, ESQ.**
**Clerk of the Court**

**By:** /s/ Jahkyda Coakley____
        **Deputy Clerk II**

**Dated**: January 10, 2025____

IN THE SUPREME COURT
OF THE VIRGIN ISLANDS

**FILED**

January 10, 2025 03:07 PM
SCT-CIV-2016-0044
VERONICA HANDY, ESQUIRE
CLERK OF THE COURT

**SWAN, Associate Justice, dissenting.**

¶1 Appellant, Jeremy Simkins ("Simkins"), stepped on a manhole cover on the public sidewalk abutting private property, rented by several tenants, including Bank of Nova Scotia ("BNS") and injured his leg. Simkins sued the Virgin Islands Department of Public Works ("VIDPW"), the Virgin Islands Waste Management Authority ("VIWMA"), and BNS, alleging that the manhole was not properly maintained and that the defendants failed in their duty to warn him of the dangerous condition of the sidewalk. The Superior Court's September 24, 2014 memorandum opinion and order granted summary judgment in favor of BNS, concluding that BNS had no legal duty to warn Simkins of the dangerous condition of the sidewalk. I would affirm the Superior Court's September 24, 2014 memorandum opinion and order, albeit on different grounds from those articulated by the Superior Court.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

¶2 On January 24, 2008 in Christiansted, St. Croix, Simkins was traversing a public sidewalk in the town area. The sidewalk abutted property owned by Kongens Gade Building Corp., known as 43B and 43C King Street and 7 Prince Street (also known as 1156 King Street). Simkins stepped on a manhole cover, which overturned, causing him to fall into the hole and injure his leg. Kimberly Alderman, acting on behalf of Simkins, reported the incident to the Virgin Islands Public Works Department ("VIPWD") and to the Virgin Islands Waste Management Authority ("VIWMA").

¶3 On April 17, 2008, Simkins filed a lawsuit naming BNS, VIPWD, and VIWMA as defendants. In his complaint, Simkins alleged that the defendants were responsible for negligently installing the manhole cover. Simkins also alleged that the defendants had a duty to warn him of the disrepaired condition of the manhole cover on the public sidewalk and that their

failure to warn him of this dangerous condition was a breach of their legal duty owed to him. The defendants' alleged breach, Simkins argued, was the direct and proximate cause of the personal injuries he sustained.

¶4      All defendants named in the lawsuit filed answers to the complaint.  Defendant BNS filed a crossclaim against its co-defendants VIDPW and VIWMA.

¶5      BNS subsequently moved for summary judgment on September 21, 2009.  In its motion, BNS contended that Simkins was never its customer, its business invitee or its licensee, and that on the day he was injured he was not going to BNS, a tenant, to conduct business.  Rather, BNS alleged that Simkins was proceeding to the building housing BNS in order to visit another tenant in that same building.   BNS also alleged that Simkins was not injured on the portion of the building that BNS leased or controlled.   BNS concluded that Simkins presented legally insufficient facts to hold it liable for his injuries because liability cannot be automatically imposed on BNS for simply being a leaseholder or tenant of a portion of the building on a property abutting the public sidewalk.

¶6      Simkins opposed BNS' motion for summary judgment on October 26, 2009.  Simkins argued that BNS, as one of several tenants of the property abutting the sidewalk, owed Simkins a duty of care.  BNS filed a renewed motion for summary judgment on September 11, 2013.  Simkins also opposed BNS' renewed motion for summary judgment in a response to the motion dated November 1, 2013.

¶7      On September 24, 2014, the Superior Court issued a memorandum opinion and order granting summary judgment in favor of BNS and against Simkins.  The court held that BNS owed no legal duty to Simkins regarding the condition of the public sidewalk adjacent to the property, ultimately dismissing Simkins' verified complaint against BNS.  Simkins' timely

appeal encompasses both the order dated September 24, 2014, which granted BNS summary judgment against him, and a subsequent order dated July 23, 2016, approving the stipulation of voluntary dismissal among the other parties, thereby dismissing the entire case with prejudice against the other parties.

## II.       JURISDICTION

¶8      BNS argues that this Court lacks jurisdiction because the Superior Court's July 27, 2016 order was a voluntary dismissal order that specifically granted with prejudice the parties' stipulation of dismissal on all claims of Simkins against all defendants.  BNS further argues that the wording of the order is evidence that Simkins did not preserve his right to appeal from the summary judgment order because the order extinguished all of Simkins' claims against BNS.  In his reply brief, Simkins disputes BNS' argument, contending that jurisdiction is proper before this Court because he did not settle his claims with BNS.  It is noteworthy that the Government of the Virgin Islands and Simkins were parties and signatories to the stipulation for dismissal— not BNS.  Importantly, the Superior Court's July 23, 2016 order referenced the joint stipulation filed by Simkins and the Government of the Virgin Islands.  Therefore, the proceeding between BNS and Simkins was not settled but Simkins' claim against the government and the government's entities was settled.  The Superior Court's order may not have fully articulated the parties that were dismissed from the case.  Nonetheless, the litigation between BNS and Simkins remained ongoing, despite the stipulation for dismissal between Simkins and the Virgin Islands government entities.

¶9      This Court has jurisdiction over all appeals arising from final judgments, final decrees, and final orders of the Superior Court. V.I. CODE ANN. tit. 4, § 32(a).  An order granting

summary judgment and dismissing all remaining claims constitutes a final order within the meaning of section 32(a). *See, e.g.*, *United Corp. v. Hamed*, 64 V.I. 297, 302 (V.I. 2016). Because the Superior Court's September 24, 2014 summary judgment order adjudicated all of Simkins' claims with respect to BNS, and the Superior Court's July 27, 2016 order disposed of all of Simkins' other outstanding claims, we have jurisdiction over this appeal. *See also Greene v. Virgin Islands Water & Power Auth.*, 67 V.I. 727, 733 (V.I. 2017).

## III.    STANDARD OF REVIEW

¶10    "This Court exercises plenary review of a Superior Court's grant of summary judgment." *Williams v. United Corp.,* 50 V.I. 191, 194 (V.I. 2008) (citing *Maduro v. Am. Airlines, Inc.,* S. Ct. Civ. No. 2007–029, 2008 WL 901525, at *2 (V.I. Feb. 28, 2008) (unpublished)).

## IV.    DISCUSSION

   **a. BNS owed no legal duty to report the defective manhole cover to the Virgin Islands government or to warn Simkins of the dangerous condition of the public sidewalk abutting the private property in which it was one of several tenants because BNS did not own the public sidewalk nor the premises housing its business or voluntarily assume such maintenance duties of the sidewalk.**

¶11    Simkins raises two issues on appeal. First, whether BNS owed Simkins a duty to report the defective manhole cover to the government of the Virgin Islands. Second, whether BNS had a duty to warn pedestrians of the dangerous condition of the sidewalk.

¶12    Firstly, Simkins asserts that BNS occupied and controlled the sidewalk and had a duty to maintain it, that paragraphs 8 and 9 of BNS' commercial lease with the landowner provided evidence that "BNS physically leased and controlled the sidewalk, that the property did not merely abut the sidewalk," and further that such evidence is sufficient to create a genuine issue

of material fact whether the sidewalk was under BNS' control and, therefore, the Superior Court granting summary judgment is in error. (Appellant's Br. 5-7.)

¶13    Simkins also argues in the alternative that if this Court were to determine that the Virgin Islands Government owns and controls the sidewalk, the Court should conclude, in light of *Machado v. Yacht Haven, U.S.V.I., LLC*, 61 V.I. 373, 379 (V.I. 2014), which holds that the foreseeability of harm is the touchstone of the existence of a land possessor's duty of reasonable or ordinary care, that a reasonable jury could decide that Simkins' injury was the foreseeable result of BNS's failure to maintain the public sidewalk abutting the private property which BNS leased a portion of to house its place of business.

¶14    Simkins' arguments are premised on the contention that BNS leased and occupied the property abutting the public sidewalk where he allegedly fell and injured himself. The language in paragraphs 8 and 9 of BNS' lease with its landlord provides that:

> 8. *Maintenance. Landlord will provide all services customary in first class office buildings in the Virgin Islands, including cleaning of the public portion of the building and the sidewalks, excluding interior tenant cleaning.* Tenant shall have the obligation to maintain and keep the demised[1] premises in clean condition and good repair, including the normal day-to-day maintenance. Upon expiration of the term of this lease or any extension hereof, *Tenant will surrender the premises to Landlord in as good condition as they are now in.*
>
> 9. Repairs. Landlord shall maintain the structure in a sound and safe condition including the exterior of the premises, the building, the sidewalk, etc. Provided, however that any repairs necessitated by Tenant's use of the premises other than ordinary wear and tear, shall be for the account of Tenant whether or not the same are occasioned by negligence.

---

[1] Demised means the conveyance of an estate by will or lease; the instrument by which such a conveyance is accomplished or the passing of property by descent or bequest. BLACK'S LAW DICTIONARY 180 (9th ed. 2009).

(emphasis added) (J.A. 83.) Crucially, the language of paragraph 8 of BNS's lease states unequivocally that "tenant shall have the obligation to maintain the demised premises in clean condition and good repair, including the normal day-to-day maintenance." (J.A. 83.) The "demised premises" is the area occupied by BNS as one of several tenants in the building on the property contiguous to the public sidewalk. Flabbergastingly, Simkins conveniently and exasperatingly ignores the succinct and unambiguous language of BNS' lease with the landlord/owner of the property, which states in paragraph 9 under the heading of repair that the "landlord shall maintain the structure in a sound and safe condition, including the exterior of the premises, the building, the sidewalk etc." (J.A. 83.)

¶15      This case, however, is not a lawsuit between landlord and tenant, nor is it a lawsuit emanating from the negligence of one of the tenants occupying a portion of the premises under its ownership or control, but a case involving a citizen who was injured on the public sidewalk. This case involves premises liability that falls under the theory of negligence. *See Antilles School, Inc. v. Lembach*, 64 V.I. 400, 409 (V.I. 2016). In the Virgin Islands, the foundation elements of negligence are: (1) a legal duty of care to the plaintiff, (2) breach of that duty of care by the defendant, (3) constituting factual and legal cause of (4) damages to the plaintiff. *See id.* "To determine whether a legal duty exists, the court must consider the following factors: (1) the reasonable foreseeability of the injury; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against the injury; and (4) the consequences of placing that burden on defendant." *See Aubain v. Kazi Foods of V.I., Inc.*, 70 V.I. 943, 950 (V.I. 2019) (citing *Bodkin v. 5401 S.P. Inc.,* 768 N.E. 2d 194, 203 (Ill. App. Ct. 2002)). This Court further established in *Machado* that in all premises liability actions in the Virgin Islands "the foreseeability of harm is

the touchstone of the existence of a land possessor's duty of reasonable or ordinary care." 61

V.I. at 386 (internal quotation marks and alterations omitted).

¶16    In *Machado*, the plaintiff brought a premises liability lawsuit against Yacht Haven

U.S.V.I., LLC after she tripped over a sprinkler head and fell, injuring herself in a parking lot on

the premises of the Yacht Haven Grande marina and galleria complex. At the end of discovery,

the defendant moved for summary judgment, which the Superior Court granted, holding that

Yacht Haven Grande owed no duty of care to the plaintiff as a business visitor because she

exceeded the scope of her invitation.[2] Reviewing the case on appeal, this Court held that in a

premises liability lawsuit, a land possessor's duty of care is not based on the entrant's status as a

trespasser, a licensee or an invitee, thereby eliminating this older trichotomy system. *Id.* at 382-

83. Instead, this Court based a land possessor's duty of care on the foreseeability of harm. *Id*. at

384.

¶17    *Machado* informs all Virgin Islands private and public land possessors that in all

premises liability actions their duty of care is based on the foreseeability of harm. Although

Simkins cites vehemently to *Machado* for his strongest argument that BNS should be liable for

the injuries he sustained, he fails to fully appreciate that the extent of physical control a party

maintains over the land/property is significant to its potential liability. Considering whether

BNS owned or controlled the public sidewalk on which Simkins was injured or whether Simkins

was injured on property owned and controlled by the Virgin Islands government, the issue is

---

[2] The Superior Court found a land possessor's duty to an entrant on his or her land is dependent largely on whether the person entering the land is a trespasser, licensee, or invitee. The court further classified invitees into two categories: 1. public invitee and 2. business visitor. The court defined business visitor as "a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." *Machado v. Yacht Haven U.S.V.I., LLC*, 2012 WL 5894805, at *3 (V.I. Super. Ct. Nov. 16, 2012) (unpublished).

whether BNS is a possessor of the land or property in question.  The Restatement (Second) of

Torts defines "possessor of land" in § 328E as:

> (a) a person who is in occupation of the land with intent to control
> it or (b) a person who has been in occupation of the land with
> intent to control it, if no other person has subsequently occupied it
> with intent to control it or has subsequently occupied it with intent
> to control it , or (c) a person who is entitle to immediate occupation
> of the land, if no other person is in possession under [c]lauses (a)
> and (b).

Occupation is defined as "physical control over the land."  BLACK'S LAW DICTIONARY 973 (5th

ed. 1979).  Here, BNS was not a possessor of the relevant land or property.  BNS did not have

physical control over the land at issue and its commercial lease did not grant it such a privilege.

BNS was one of several commercial tenants in a building with no intent or authority to control

the land/property.  *See e.g. Antilles School*, 64 V.I. at 438; *Machado*, 61 V.I. at 386; and *Perez v.*

*Ritz-Carlton (Virgin Islands), Inc.*, 59 V.I. 522, 526 (2013) (observing that occupation of and

intent to control property are indicia of a possessor of land/property).

### b. Simkins' injury was not the foreseeable result of BNS's failure to maintain the public sidewalk abutting the private property which housed its place of business in a multi-tenant building.

¶18    The overwhelming majority of jurisdictions and corresponding case law support the

presumption that a tenant/lessee does not bear a duty of any kind regarding public sidewalks not

located within the tenant's property boundaries.[3]

---

[3] *See e.g., Berry v. Houchens Mkt. of Tenn., Inc.,* 253 S.W.3d 141, 146 (Tenn. Ct. App. 2008) (shopping center tenant had no duty to patron who slipped in oil in parking lot where parking lot served multiple tenants and landlord was responsible for its maintenance); *Marrone v. S. Shore Props.*, 816 N.Y.S.2d 530, 532 (N.Y. App. Div. 2006) (lessee had no duty to maintain strip mall sidewalk it neither owned nor possessed exclusively); *Durm v. Heck's, Inc.*, 401 S.E.2d 908, 911 (W. Va. 1991) ("[W]here a lease agreement clearly sets forth that the lessor has the duty to maintain the non-leased common areas, thereby retaining the lessor's control over such areas, the lessee of a store located in a shopping center is not liable when a patron sustains

¶19     Additionally, the Restatement (Third) of Torts: Liability for Physical and Emotional

Harm, § 54(c) (2010), takes a similar view, stating that "a possessor of land adjacent to a public

---

injuries as a result of an accident which occurs on the non-leased common area."); *Johnson v. Tom Thumb Stores, Inc.,* 771 S.W.2d 582 (Tex. Ct. App. 1989) (shopping center tenant not liable to customer who fell in common area of shopping center ten feet from entrance to tenant's store where landlord was responsible for and had control over common areas); *Dopico–Fernandez v. Grand Union Supermarket,* 841 F.2d 11, 14–15 (1st Cir. 1988) (under Puerto Rico law, tenant served by common areas in mini-mall not responsible for maintaining those areas); *Raspilair v. Bruno's Food Stores, Inc.,* 514 So.2d 1022, 1024 (Ala. 1987) (shopping center tenants Wal–Mart and Bruno's did not owe duty to customer who fell on plastic bag in parking lot where, under the lease, shopping center owner was responsible for cleaning and maintenance of parking lot); *Hall v. Quivira Square Dev. Co., Inc.,* 675 P.2d 931, 932–33 (Kan. 1984) (tenant had no duty to warn customer who fell in multi-tenant lot because shopping center owner solely responsible for making all repairs and conducting maintenance for common areas including sidewalks and parking spaces); *Torres v. Piggly Wiggly Shop Rite Foods, Inc.*, 600 P.2d 1198, 1200 (N. Mex. Ct. App. 1979) (shopping center tenant not liable for customer's fall on grease in parking lot where, though lease silent as to responsibility for maintenance, parking lot was for common use of all tenants and tenant did not exercise control over parking lot); *Leary v. Lawrence Sales Corp.*, 275 A.2d 32, 34 (Pa. 1971) ("In Pennsylvania, it has long been established as a principle of landlord-tenant law that where the owner of real estate leases various parts thereof to several tenants, but retains possession and control of the common passageways and aisles which are to be used by business invitees of the various tenants, the obligation of keeping the common aisles safe for the business invitees is imposed upon the landlord and not upon the tenants, in the absence of a contrary provision in the lease or leases."); *Underhill v. Shactman*, 151 N.E.2d 287, 290 (Mass. 1958) (shopping center tenant not liable to customer who fell in parking lot landlord was obliged to maintain notwithstanding fact that tenant could provide parking attendants). (*See also, e.g., Holmes v. Kimco Realty Corp*, 598 F.3d 115, n.4 (3rd Cir. 2010); *Beach v. City of Phoenix*, 667 P.2d 1327, 1328 (Ariz. Ct. App. 1982) (observing that a city "owes a duty to the public to keep its streets and sidewalks reasonably safe for travel and to warn the users of any actual danger known to the [c]ity or which could be known to it in the exercise of reasonable care") *aff'd. in part; rev'd and vacated on other grounds,* 667 P.2d 1316, 1318 (Ariz. 1983) (citing 10 EUGENE MCQUILLIN THE LAW of MUNICIPAL CORPORATIONS § 30.73, (3d ed. 1981) for the proposition that "[t]he streets and ways of a municipal corporation are held by it in trust for the public" and citing 19 MCQUILLIN § 54.11, at 27(3d. ed. 1967) and 63 C.J.S. *Municipal Corporations* § 802, 115-16 (1950) for the proposition that "[t]he standard of care imposed on a municipality is that . . . . [i]t is bound to keep [same] reasonably safe for public travel"); *Koerth v. Borough of Turtle Creek*, 49 A.2d 398, 399 (Pa. 1946) ("it is of course the duty of a municipality to maintain its sidewalks in a reasonably safe condition."); *Hausser v. Giunta*, 669 N.E.2d 470, 471 (N.Y. 1996) (noting that the common law provides that "[g]enerally, liability for injuries sustained as a result of negligent maintenance of or the existence of dangerous and defective conditions to public sidewalks is placed on the municipality and not the abutting landowner").

walkway has **_no_** duty under this Chapter with regard to a risk posed by the condition of the walkway to pedestrians or others if the land possessor did not create the risk." (emphasis added).

¶20      Furthermore, as a general matter, in the absence of a statute or ordinance to the contrary, a landowner whose property abuts a public way has no duty to repair or maintain it. *See e.g., Roark v. Hunting*, 248 N.E. 896, 898-99 (N.Y. 1969); *McFarline v. Mickens*, 173 A.3d 417, 424 (Conn. App. Ct. 2017); *Lange v. Wehrenberg Theatres, Inc.*, 870 S.W. 2d 880, 883 (Mo. Ct. App. 1993); *Gilmore v. Powers*, 934 N.E. 2d 564, 567 (Ill. App. Ct. 2010); *Acosta v. City of Santa Fe*, 11 P.3d 596, 597 (N.M. Ct. App. 2000); *Dean v. Yahnke*, 670 N.W.2d 28, 31 (Neb. 2003); *Freudlich v. South Seas Operating Corp*., 398 So.2d 490, 490 (Fla. Dist. Ct. App. 1981). The primary duty of maintaining the entire area of a sidewalk in reasonable repair for the use of pedestrians, including a narrow strip within the property line of the abutting owner, but dedicated for public use as a sidewalk, rests upon the municipality, and not upon the owner or occupant of the abutting premises.  Accordingly, all of Simkins' arguments, including his argument that BNS owed him a duty to maintain the public sidewalk and failed to report the defective manhole cover are specious.  BNS' employees are employed in the banking business and not in the business of inspecting and determining whether public property abutting private property housing its leased premises, including a public sidewalk, needed repair.  Therefore, to contend that the BNS is somehow responsible for inspecting the public sidewalk is meritless and outlandish.

¶21      As an exception to the general rule in a great majority of jurisdictions, an abutting landowner will be liable to a pedestrian injured by a defect in a public sidewalk when the owner either created the condition or caused the defect to occur because of a special use, or when a statute or ordinance places an obligation to maintain the sidewalk on the owner and expressly makes the owner liable for injuries caused by a breach of that duty.  *Hausser*, 669 N.E.2d. at

471-72 (citing cases).[4]  Importantly, Simkins never contended that BNS created or caused the

issue or disrepair with the manhole cover because of its special use of the government sidewalk;

therefore, this contention is not an issue before this Court.

---

[4] Delaware, for example, has collected substantial case and common law on the matter: Delaware common law follows the generally accepted rule that, in the absence of statute, an owner or occupant of abutting real estate is not liable to pedestrians who are injured as a result of defects in a sidewalk that the owner or occupant did not cause.  *Schreppler v. Mayor and Council of the Town of Middletown*, 154 A.2d 678, 679 (Del. 1959).  *See also Massey v. Worth*, 197 A. 673, 675 (Del. 1938) (abutting owner is not liable for injuries resulting from failure to repair defect in sidewalk which owner has not caused). *See generally* Annotation, *Liability of Abutting Owner or Occupant for Condition of Sidewalk*, 88 A.L.R.2d 331 (1963).  In *Schreppler,* the plaintiff was injured when she tripped and fell on a sidewalk, due to unevenness caused by roots of a tree located at the curbline. 154 A.2d at 678.  The roots had grown beneath the pavement and raised the sidewalk. *Id.*  The owner had not attempted to maintain or repair the sidewalk. *Id.* at 679. The plaintiff brought a negligence suit against the owner of the property on which the tree and sidewalk were located. *Id.*  In ruling for the owner, the Superior Court of Delaware held that the owner had no duty to maintain or repair the sidewalk. *Id.*  The court, after noting the aforementioned general rule, reasoned that the owner had no duty to maintain or repair a defect which came about not at her own doing, but as the result of natural causes. *Id.*

> The Supreme Court of Delaware has pointed out that the duty to use reasonable care to keep sidewalks safe for passage by citizens is generally imposed upon the municipality. *Burns v. Boudwin,* 282 A.2d 620, 622 (Del. 1971). Even when a municipality places that burden on the abutting landowner, such delegation of responsibility does not prescribe a standard of care in favor of third parties. *Id.* In *Burns,* the plaintiff slipped and fell on a natural accumulation of ice and snow on a sidewalk abutting defendant's premises. *Id.* at 621. A local ordinance delegated to the owner of a lot abutting a sidewalk the duty of keeping the walk free of ice and snow, in order to allow for safe passage by pedestrians. *Id.* The ordinance also imposed a criminal penalty upon abutting landowners who failed to comply with its provisions. *Id.* The supreme court held for the defendant, and expressly followed the majority rule that such an ordinance imposes no civil liability on the lot owner in favor of a third party injured by reason of a violation of the ordinance. *Id.* at 622. … This Court has previously recognized that "[i]t is well settled in Delaware that a possessor of property is not an insurer of his business invitees safety while the invitee is on the property." *Hess v. United States,* 666 F.Supp. 666, 670 (D. Del.1987) (citing *Robelen Piano Co. v. DiFonzo*, 169 A.2d 240, 245 (Del. 1961); *Niblett v. Pennsylvania R.R. Co.*, 158 A.2d 580, 582 (Del. 1960)). Instead, the property possessor simply owes a duty to the business invitee to exercise reasonable care with respect to the property to which one is invited. *Dellinger v.*

¶22     The Virgin Islands also follows the general rule that the territorial government has an affirmative duty to exercise reasonable care and diligence in maintaining the public sidewalks in a reasonably safe condition for public travel. The Virgin Islands Legislature has vested different divisions of the Virgin Islands government with the responsibility for maintaining roads and sewage systems dedicated to public use, and there are no clear exceptions to the rule. Title 20 section 1 of the Virgin Islands Code unambiguously states that "[t]he duty of keeping the public highways, bridges, courses, breastwalls, guardrails, and private roads dedicated to public use, in good serviceable condition is incumbent upon the government of the Virgin Islands." *See also, Gov't of the V.I. v. Pant*, 30 V.I. 259, 262 (D.V.I. 1994) ("The government has a duty to keep the public roads safe, including warning users of all road hazards such as blind entrances."). Public sidewalks abutting public roads and streets are integral and inseparable parts of the public roads and streets. *See Nevis v. Gov't of the V.I.*, 26 V.I. 162, 167 (V.I. 1991) (noting that "[t]he

---

*United States,* 676 F. Supp. 567, 570 (D. Del. 1987); *Hess,* 666 F. Supp. at 670. The Supreme Court of Delaware has described this standard of care in detail. The possessor has a duty to warn of unreasonable risk on the possessor's property of which the possessor knows or should know by the exercise of reasonable care and which the invitee would not be expected to discover. *DiSabatino Brothers, Inc. v. Baio,* 366 A.2d 508, 510 (Del. 1976). Thus, if the potential danger is so apparent that the invitee can reasonably be expected to notice it and protect against it, the condition itself constitutes adequate warning. *Niblett v. Pennsylvania R.R. Co.*, 158 A.2d 580, 582 (Del. 1960).

A minority of cases and jurisdictions have found otherwise, imposing a duty to inspect or warn tenants abutting public sidewalks. *See, e.g., Levy v. Home Depot, Inc.,* 518 So.2d 941 (Fla. Dist. Ct. App. 1987) (Home Depot not absolved from liability for gap in elevated sidewalk in common parking lot of shopping mall simply because mall owner contractually responsible for common area maintenance); *Wilson v. Allday,* 487 So.2d 793, 798 (Miss.1986) (lessee had duty of care with respect to shopping center parking lot if its use constituted possession and control); *Hopkins v. F.W. Woolworth Co.*, 419 N.E.2d 302, 304 (Mass. App. Ct. 1981) (lessee in shopping mall had duty to patron who fell on common area sidewalk near lessee's store, "[e]ven if a finding were warranted that Woolworth had no control over the sidewalk on which the plaintiff fell, it would not be relieved from its duty to warn invitees of danger" of which it was aware). (Cases collected from *Holmes v. Kimco Realty Corp*, 598 F.3d 115, 121 n.4 (3rd Cir. 2010.)

Department of Public Works installed the manhole in the sidewalk and [it] has the "continual duty to maintain the sidewalk and to repair all deficiencies which foreseeably could endanger the travelling public and particularly pedestrians."). And 31 V.I.C. § 1 further vests the Commissioner of Public Works with the mandate to, in pertinent part,

> participate in the planning of, supervise the construction of, and repair and maintain, all government buildings and grounds, public roads, highways, seawalls, wharves, seaways, public recreation areas, airports, and properties of like character (2) repair and maintain other government-owned public utilities, and recommend methods for their maintenance; (3) provide engineering and land survey services; [and] (4) plan for public works . . . .

Importantly, the sidewalk, which is the distinct surfaced portion of the public street between the curb line and the adjacent property line, is intended for pedestrians' use and is an integral part of the public street and, therefore, covered by relevant statutes and embraced in the duty imposed upon municipalities with respect to public streets. *See e.g. Dillon v. City of Yuma*, 97 P.2d 535, 536 (Ariz. 1940) (observing that "the duty of the [city] to keep its sidewalk reasonably safe for travel thereon . . . . is one that arises from the fact that the law gives the [city] power and authority over its streets").

¶23    "[P]remises liability is a theory of negligence where the basis of the duty of care is the possession or control of the premises where an injury occurred." *Antilles School*, 64 V.I. at 413. Simkins provided no evidence that BNS "possess[ed]" or "control[led]" the public sidewalk on which he injured himself. The explicit and unambiguous language of Paragraph 8 of BNS' commercial lease agreement is devoid of any language indicating that BNS, or any tenant on the leased property, possessed or controlled the public sidewalk. The subject of the first sentence in that paragraph is confined only to the landlord or owner of the property and excludes all tenants, including BNS. The next two sentences reference the demised premise or premises, which is

limited to the area of the building leased by BNS. Similarly, Paragraph 9 is limited to BNS'

landlord, and does not include BNS, which is the tenant. The following sentences refer to repairs

to areas of the premises leased by BNS. The unmistakable language of BNS' lease agreement

simply fails to confirm that BNS owned or controlled the public sidewalk. Accordingly, Simkins

demonstrably and utterly failed to identify any evidence that BNS contributed to the defective

condition of the manhole cover. And, while it is possible for a private entity to control, possess

and voluntarily assume the maintenance of a sidewalk, Simkins has failed to present any

evidence that BNS has done so. Considering the language in the commercial lease agreement,

Simkins' assertion of BNS' liability for the defect in the public sidewalk under these

circumstances is nonsensical. *See e.g. Pauley v. Ball Metal Beverage Container Corp.*, 460 F.3d

1069, 1074-75 (8th Cir. 2006) (holding that the owner did not retain possession and control over

premises, and thus was not liable under a negligence theory); *Ma v. Bon Appetit Mgmt. Co*., 785

Fed. Appx. 293, 295-96 (6th Cir. 2019) (holding that a restaurant was not in "control" of a dining

hall, and thus had no duty to keep premises safe, and that the restaurant was not liable for injuries

a professor sustained under an occupation theory of premises liability).

¶24    Secondly, Simkins asserts that BNS had a duty to warn pedestrians of the dangerous

condition of the sidewalk. However, in the great majority of jurisdictions, the duty to warn,

inspect, report, etc. potential hazards on public property can only fall to abutting landowners or

tenants if the parties actually *caused* the hazard, an allegation which has never been raised by

Simkins.

¶25    The Superior Court's failure to conduct a *Banks* analysis on the question of' whether a

landowner or tenant has a duty to warn others regarding defects in an abutting public sidewalk of

which it is or should be aware, or a duty to report those defects to the government agencies

charged with remedying those conditions is not reversible error. In *Banks*, this Court determined that because the Virgin Islands Supreme Court is vested with supreme judicial authority by law, the Virgin Islands Legislature repealed Title 1 section 4 of the Virgin Islands Code, which had previously been applied under the Restatements of Law, absent contrary local laws. *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 975 (V.I. 2011). Accordingly, this Court instructed the Superior Court to conduct a three-part analysis when confronted with an issue of common law not yet addressed by the Supreme Court of the Virgin Islands by balancing the following non-dispositive factors : (1) whether any Virgin Islands courts have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) which approach represents the soundest rule for the Virgin Islands. *Id.* Because the Supreme Court of the Virgin Islands has yet to address the applicable law regarding whether a landowner or tenant has a duty to warn others regarding defect in an abutting public sidewalk of which it is or should be aware, or a duty to report those defects to the government agencies charged with remedying those conditions, the Superior Court probably should have conducted a *Banks* analysis to determine the law governing a tenant's duty to warn others regarding a defect in an abutting sidewalk of which it is or should be aware, or the laws controlling a duty to report those defects to the government agencies charged with remedying those conditions. However, because it is a well-accepted principle, (generally and legally,) that a landowner or tenant has no duty to warn of defects in the government's public sidewalk abutting the landowner or tenant's property, the Superior Court's failure to perform a *Banks* analysis would not contravene this Court's precedent. *See e.g. Machado*, 61 V.I. at 379 (noting that a *Banks* analysis is not necessary because the definition of consideration is widely accepted).

¶26     The Third Circuit has also identified a "sphere of control" doctrine which can be applied to cases of liability of private entities for injury caused to individuals on abutting public property. This doctrine is well-illustrated in *Fabend v. Rosewood Hotels and Resorts,* L.L.C., 381 F.3d 152 (3d Cir. 2004), a matter originating in the Virgin Islands, in which a resort guest sued Rosewood Hotels and Resorts for failing to warn of the potentially dangerous conditions of the sea abutting Rosewood's property.   The court found that the beach and sea were not within Rosewood's "sphere of control," particularly as responsibility for such public areas was specifically delegated to the National Park Service:

> The specific factual setting of a case will ultimately dictate whether a party is in the position to control or has the power to control land adjacent to his property such that a duty to protect or warn arises.  The "sphere of control" test requires that we look at the circumstances of the case to ascertain whether sufficient control exists over the adjacent premises. Relevant indicia of control include who is responsible for the safety of guests, who has the authority to dictate who may use the property, and whether the guests were invited by the property owners to use the adjacent land. *See Pacheco v. United States,* 220 F.3d 1126, 1131–32 (9th Cir.2000). If, for example, an innkeeper leases property to operate a hotel, but the government retains control over the land for the use of general public, the innkeeper must only warn guests of dangers on the leased property and the ingress or egress therefrom. *See Stedman v. Spiros*, 161 N.E.2d 590 (Ill. App. Ct. 1959), *cited in Banks v. Hyatt Corp.,* 722 F.2d 214 223–24 (5th Cir. 1984); *see also Jones v. Halekulani Hotel, Inc.,* 557 F.2d 1308, 1311 (9th Cir.1977) (finding that a hotel had no duty to protect someone who was injured diving from a seawall owned by the hotel but used as a public easement "[b]ecause the hotel had no right to control the use of the public thoroughfare ... [and][i]t is inequitable to impose a duty of maintenance on one without authority to control use"). … We hold that defendants only had a duty to warn Fabend if the beach and the adjacent bay were under their "sphere of control." The beach was within their "sphere of control" if they had the legal right to control the conditions and use of the area, or possessed the area and evidenced an intent to control it even absent clear legal authority. In conducting this inquiry, we consider who had the legal authority to control the area, including

the right to control access, establish rules for use, and mitigate or warn of any dangerous conditions. We also consider the *de facto* control the defendants exercised over the area, and whether these actions were consistent with the terms of the legal relationship that placed control with the National Park Service.

It is undisputed that the park, including the swimming area, was owned by the federal government, and that the National Park Service had the right to exercise exclusive control over activity in that area. While the National Park Service had granted a license to Caneel and Rosewood, that license was limited under the controlling documents to the operation of cabins and a campground, a gift shop, and a water sports shop at locations assigned by the National Park Service, subject to certain controls retained by the National Park Service. For present purposes, the critical fact is that the National Park Service, except to the extent of authorizing operation of a water sports shop, did not in those documents surrender any control of the beach to Caneel or Rosewood. It follows that Caneel and Rosewood had no actual authority to control the swimming area where Fabend was injured. The National Park Service retained that authority and exercised it by promulgating regulations governing activities there and, indeed, publishing warnings of risks to be found there.
Nevertheless, Fabend suggests that Caneel and Rosewood, despite their lack of authority to do so, assumed the responsibility of controlling activity in the swimming area and that, accordingly, this area must be considered a part of their premises. The problem with this theory is that all of the conduct of Caneel and Rosewood is consistent with their limited license and there is no evidence from which a jury could find that they exercised control over the swimming area.

We reject the idea that a jury might find that Caneel and Rosewood exercised joint control over the swimming area. Fabend asserts that the Appellee's *de facto* control is evidenced by the facts that (1) Appellees were allowed to post signs, (2) there was no National Park Service regulation prohibiting it from hiring a lifeguard, (3) Appellees had a "maintenance crew;" (4) Appellees provided "trash cans as a service to beach users as they would return to the campground;" (5) that Appellees' personnel would at times patrol the beach for campground security purposes, and that one of its employees acknowledged that he had "monitored and policed" the swimming area on occasion; (6) Appellees operated the only amenities on the beach; (7) Appellees exclude non-guests from the beach at times and (8) Appellees suggested in their advertising that the beach belongs to them.

> There is no question that Caneel and Rosewood had *actual* authority to post signs necessary or appropriate to the operation of a campground and the water sport shop, but that is of no legal significance here. What is important is that there is no evidence that they ever posted a sign purporting to direct or control activities in the swimming area. Similarly, Rosewood had *actual* authority to have its personnel provide campground security, as well as trash cans for its guests returning there, and it is not surprising that it did so. None of this is probative, however, of whether Caneel and Rosewood in fact exercised control over the swimming area. The relevant documents do not grant control of the swimming area to Caneel or Rosewood and, indeed, they reserve that control to the National Park Service.

*Fabend*, 381 F.3d at 156-58.

¶27    Similar to *Fabend*, where a public entity, the National Park Service, was delegated particular responsibility for the public space on which the injury occurred, so in this case, there are certain public entities, namely, the VIDPW and the VIWMA, responsible for the public sidewalk and the manhole cover, respectively, on which Simkins' injury occurred. As *Fabend* states, the facts are vital in dictating any possible assumed responsibility of a private defendant in such situations. Here*,* no evidence has been presented to the Court reflecting an assumed or imposed "sphere of control" that the Bank of Nova Scotia might have over a public sidewalk abutting a privately owned property with a building, a part of which is leased by BNS. It has neither been presented, nor is it logical to assume, that bank employees, who are in the business of banking, would have any duty to inspect public walkways and warn the users thereof regarding potential dangers arising from such use, a duty which *is* directly within the scope of employment of VIDPW and VIWMA employees. The responsibility to prevent situations as that examined in this case has already been specifically consigned to certain public entities by the government that created those entities; it would be contrary to public policy for this Court to redirect such responsibility. Lastly, it is noteworthy that BNS is the sole tenant being sued while

other tenants in the same building, similarly situated as BNS (and thus, ostensibly sharing in the duty to warn) are not made parties to this lawsuit. Likewise, the owner of the property abutting the sidewalk is not made a party to the lawsuit.

## V.        CONCLUSION

¶28      In summary, upon review of existing law among a substantial majority of jurisdictions, the assigning of a duty to warn, or of any other duty, to a private entity leasing property adjacent to a public hazard is rare and only to be undertaken in very specific factual circumstances, none of which is present in this case. While this Court has held that private entities may owe certain duties to members of the public who sustain injuries due to hazards *on* property owned or controlled by those entities (*see Machado* 61 V.I. at 386; *Perez*, 59 V.I. at 533), it has not addressed duties owed by entities merely *abutting* public property to individuals traversing that public property. Here, the burden of responsibility may be easily allocated. BNS is merely one of several tenants leasing a portion or area of the private property abutting the public sidewalk on which Simkins was injured. BNS has no apparent sphere of control over the sidewalk. Nor do its employees, who are in the business of banking, have any special knowledge or duty regarding manhole covers on public sidewalks. Indeed, there was no indication that the bank employees had any knowledge, or should reasonably have been expected to notice, that the manhole cover was in a disrepaired and dangerous condition. It may be inferred that the cover appeared perfectly normal and hazard-free to the untrained eye, considering that Simkins stepped directly on it without any concern for possible danger to himself. Meanwhile, the DPW and WMA have direct responsibility for maintaining public sidewalks and potential hazards thereon, including manhole covers. In conclusion, legal precedent and the facts support the Superior Court's

finding that the Bank of Nova Scotia owed no duty to warn, or indeed any other duty, to Simkins

as a user of a public sidewalk abutting the premises in which BNS was one of several tenants.

Therefore, I would affirm the Superior Court's September 24, 2014 memorandum opinion and

order.

**DATED this 10th day of January 2025.**


                                       _/s/ Ive Arlington Swan_____
                                        **IVE ARLINGTON SWAN**
                                        **Associate Justice**

**ATTEST**

**VERONICA J. HANDY, ESQ.**
**Clerk of the Court**

**By:** /s/ Jahkyda Coakley_____
            **Deputy Clerk II**

**Dated:** January 10, 2025_____